No. 22,983.

GEORGE R. McINTOSH, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. EMPLOYER'S LIABILITY ACT—*Duty of Injured Person to Use Reasonable Diligence in Securing Medical or Surgical Aid.* It is the duty of a person injured through the negligence of another to use reasonable diligence in securing medical or surgical aid, and he cannot recover for suffering or ailment resulting from his own failure to exercise such diligence; but if that degree of care is used by him in the selection of physicians or surgeons, and their lack of due care and skill in treatments or operations aggravates or increases the original injuries, such increase is not deemed to be the fault of the injured person, but is regarded in law as a part of the original injury, which reasonably ought to have been anticipated by the original wrongdoer, and for which he is responsible.

2. SAME—*Instructions.* An instruction on the subject is held to have been appropriate under the evidence and a correct statement of the law.

3. SAME—*Trial—Special Findings of Jury Evasive and Inconsistent.* Special findings of the jury relating to the negligence of the defendant and the contributing negligence of the plaintiff in the reading and comparison of orders issued as to the passing of railroad trains, which resulted in a collision and consequent injuries and death of trainmen, examined and held to be evasive and so inconsistent as not to warrant the entry of a judgment thereon.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed June 11, 1921. Reversed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, and *J. E. Torrance,* of Winfield, for the appellant.

*W. L. Cunningham,* of Arkansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: George R. McIntosh brought this action against the Atchison, Topeka & Santa Fe Railway Company, under the Federal employers' liability act, to recover damages sustained by him in a head-on collision caused, it is alleged, by the negligence of the defendant in giving an order as to the time and place of the meeting of two trains. The trial re-

McIntosh v. Railway Co.

sulted in findings and verdict in favor of the plaintiff, fixing the extent of his injury at $25,000, but also finding that $7,000 should be deducted from that amount on account of the contributory negligence of the plaintiff. Defendant appeals, and insists that the evidence does not support the verdict and several of the special findings; that there was error in rulings on the admission of evidence and in the giving and refusing of instructions, and also that the verdict was given under the influence of passion and prejudice.

It appears that two trains of the defendant were traveling upon a single track in opposite directions. The one on which plaintiff was riding and acting as engineer was No. 352, and was going north from Arkansas City to Florence. His train crew consisted of himself, fireman Benning, Butts the conductor, brakeman Babbitt, and Hopson. The train coming south was designated as Extra 1817. When plaintiff's train, No. 352, reached Winfield Junction some switching was done and, the signal indicating that there were orders as to the operation of the train, plaintiff and Babbitt went into the office of the operator and there found orders on a table in three piles—one for the engineer, one for the conductor and one being the office copy. Plaintiff and Babbitt picked up the orders from the table and plaintiff read his copy aloud in the presence of the operator, White, and brakeman Babbitt. The conductor did not come for his copy as he should have done, but Babbitt signed the order for him and took a copy to the caboose at the rear of the train where the conductor then was, and delivered it to him. The conductor read the order in the presence of the brakeman, but neither he nor the engineer compared their orders as the rules required. The contents of the order are in dispute, and plaintiff's right of recovery depends upon whether the order contained directions for the trains to meet and pass at Rock, or Douglass. Plaintiff and Babbitt both testified that Douglass was named as the passing station, and Hopson testified that he heard Butts, the conductor, read the order which gave Douglass as the meeting point. On the other hand, the train dispatcher testified that Rock was the station named for passing, and that after giving it, the order was repeated back to him by the operator, each word being spelled out. Telephones were used for transmitting the

orders. White, the operator, said that the orders were written on carbon paper by a single impression and were all alike, and that Rock was written as the passing place. Butts, the conductor, produced and identified the order given to him and it directed the trains to pass at Rock. The train master testified that on the morning following the accident, he found the office copy of the order in the operator's office, and that it gave instructions for the trains to pass at Rock, but this copy was not produced because it was said to have been lost. The order delivered to those in charge of train 1817, which was said to have been sent at the same time as the one sent to train 352, named Rock as the passing point. Upon receiving the order, train 352 proceeded north to Rock, and, after attending to the discharge and taking on of freight at that place, the conductor gave the leaving signal and the train moved forward to a point between Rock and Douglass, where the collision occurred.

In the course of the trial the defendant introduced in evidence a petition filed by the plaintiff in another court against the Atchison, Topeka & Santa Fe Hospital Association and the defendant company, in which he alleged that while he was in the hospital for treatment of the injuries sustained in the collision the attending physician mistreated him and aggravated his injuries, and among other things averred that—

"If he had been properly treated he would have recovered from his injury. . . . That he suffered intense pain and that were it not for the negligence of said defendants, he would now be a strong ablebodied man in good health, and that by the negligence of said defendants he has been rendered entirely helpless and will be a permanent cripple, . . . all to his damage in the sum of $35,000.00 for which he asks judgment."

In respect to this evidence the court instructed the jury:

"A person injured by the negligent acts of another does not insure that the surgeons, doctors or nurses employed by him will be guilty of no negligence, want of care or skill or error in judgment. The liability to mistake in judgment, or the efforts or means used in the endeavor to effect a cure or to remedy a condition is an incident to the original injury, and the injured party having used ordinary care in the selection of attendants the injury resulting from such mistake is in law regarded as one of the immediate and direct damages resulting from the injury. There has been introduced in evidence in this case a petition filed in the district court of Sumner county, Kansas, against the defendant

McIntosh v. Railway Co.

herein, and other defendants to recover for injuries alleged to have been the result of malpractice on the part of the physicians and surgeons employed to treat the plaintiff for injuries for which he claims damages in this case. This has been permitted upon the theory that it may affect the plaintiff's credibility or throw light upon the facts and circumstances in this case. And you have the right to so weigh this evidence in connection with all the other facts and circumstances in this case, you being the sole judges of the weight and effect of such testimony. The filing or prosecution of that suit is not to be considered by you as in any manner augmenting or diminishing to the plaintiff's claim for damages here if he was injured as he sets out in his petition in this case, and you find that such injury was the result of the negligence of the defendant, and, if you find that the plaintiff used ordinary care in the selection of his attendants, physicians and surgeons, then if there were any mistakes in judgment, efforts or means used by the physicians in endeavoring to effect a cure or remedy the same were incidents of the original injury, and the injury resulting from such circumstances would be in law regarded as one of the immediate and direct damages resulting from the original injury. And a recovery by the plaintiff in this action would be a complete bar to that or any action by him to recover any damages for malpractice, if any, against the defendant or any attendant physician or surgeon employed by him or on his behalf to effect a cure of his original injury."

Assuming for the sake of argument that the testimony was admissible, it was brought into the case by the defendant and it became the duty of the court to instruct the jury as to the consideration which should be given to it. It was probably introduced in an effort to show that the alleged injury sustained by the plaintiff was not so great as claimed by him in this action, since he had deliberately stated in his pleading in the other action that but for the negligence of the doctors he would now be a strong, able-bodied man and in good health. The instruction was appropriate and within the authorities must be regarded as a correct statement of the law.

A person injured by the negligence or wrong of another is entitled to recover from the wrongdoer the damages which naturally result from the wrong. It is the duty of a person injured through the negligence of another to use ordinary and reasonable diligence in securing medical or surgical aid, and he cannot recover for suffering or ailment due to his own want of such diligence. In that respect he is only required to do what a reasonable person would under the circumstances. If he exercises that degree of care in the selection of physicians

or surgeons, their mistakes or lack of skill in treatments or operations, which aggravate or increase his injuries, cannot be counted as the fault of the injured person, but are regarded by the law as a part of the original injuries for which the wrongdoer is responsible and as a result which reasonably ought to have been anticipated by him. However, if the original injury is aggravated by the failure of the injured person to exercise reasonable care to obtain medical aid or surgical assistance or in failing to follow the advice or instructions of the physicians or surgeons, the enhanced damages are to be excluded from the recovery. (*Tex. & Pac. Ry. v. Hill,* 237 U. S. 208; Notes in 48 L. R. A., n. s., 93, 110, 114, 116; Note, 19 Ann. Cas. 979; 8 R. C. L. 449.) There was no attempt here to show any negligence on the part of the plaintiff in the selection of a physician or in the means taken to effect a cure. It appears that the plaintiff was promptly taken to the Atchison, Topeka & Santa Fe Hospital, which was maintained by the employees of the defendant for the treatment of injuries sustained in the operation of its railroad. Other objections are made to the instructions, but none of them are deemed to afford grounds for a reversal or to require special discussion.

An attack is made on the special findings, not only as to their being contrary to the evidence but also because they are evasive, equivocal and inconsistent. Under the evidence rules were prescribed by the defendant for the running of trains, one of which was that the engineer was made responsible for the safety of the train. Another was that when orders were delivered by the operator to the conductor, one copy was to be given to the engineer, who was to read it aloud to the conductor and then to the fireman and head brakeman, and the conductor was also required to show his copy to the rear brakeman. It is conceded that the engineer took a copy of the order, whatever it contained, from the operator's table and that he did not read it to the conductor or compare it with the conductor's copy. He states that the one he took and read named Douglass as the passing station, while the conductor's order presented in evidence named Rock as the passing place. In respect to the rules, the jury found that they required the plaintiff on receiving an order to read it aloud to the conductor of his train, and to sign the conductor's copy, and also

McIntosh v. Railway Co.

that he was jointly responsible with the conductor in observing the rules governing the movement of trains. It was found by the jury that the order sent by the train dispatcher directed that the trains should pass at Rock. The next questions were:

"4. If you answer the above question 'yes,' then state whether said train order was received by the operator at Winfield Junction. Ans. Yes.

"5. If you answer the last above question 'yes,' then state whether said operator at Winfield Junction made three impression copies of the train order on tissue paper. Ans. Evidence does not show.

"6. If you find from the evidence that plaintiff's injury was caused through the negligence of the railway company, then state in what such negligence consisted. Ans. Operator White delivered order to engineer McIntosh to meet Extra 1817 at Douglass.

"7. If you find from the evidence that the plaintiff's injury was caused through the negligence of the railway company, then state what officer, agent or employees of said railway company was guilty of such negligence. Ans. Operator White.

"8. Was train order No. 36, a 31 order, received at Winfield Junction from the train dispatcher at Newton, changed by Operator White at Winfield to read 'Douglass' instead of 'Rock'? Ans. Evidence shows 31 order No. 36 delivered to engineer McIntosh read Douglass and not Rock, evidence does not show how changed.

"9. If you answer question No. 8 'yes,' then state whether he (White) wrote the word 'Douglass' in all the impression copies of the 31 order which he delivered to the train crew. Ans. Evidence shows order to engineer McIntosh read Douglass but satisfactory evidence does not show as to the other orders.

"11. If you find that plaintiff was guilty of contributory negligence how much do you reduce the amount of your verdict on account of such contributory negligence? Ans. $7,000.00."

There was a manifest lack of candor in the answer to the fifth question. The inquiry was an important one in the determination of the action. The defendant contended, and offered testimony tending to show, that three copies of the order were simultaneously made with a steel stylus on tissue paper with carbons, directing that the trains should pass at Rock, and that the copy taken by the plaintiff was necessarily the same as the one given to the conductor. In confirmation of this theory the copy delivered to the conductor which was offered in evidence did name that station as the passing place. There was ample evidence upon which to base a finding upon the question—conflicting, it is true—but it was the function and duty of the jury to determine the conflict and give either an affirmative or negative answer to the question. The finding that there was

no evidence on the subject was evasive and untrue. There was also a lack of fairness in the answers to the 8th and 9th questions. The evidence warranted direct answers and defendant was entitled to have the questions fairly answered. The answers relating to the negligence of plaintiff and defendant are too inconsistent and unsatisfactory to warrant the judgment that was entered. The jury found that the plaintiff's injury was caused by the defendant's negligence and the negligence was that White, the operator, gave plaintiff an order to pass the other train at Douglass. The jury found that plaintiff himself was guilty of negligence which contributed to his injury, and deducted $7,000 from the amount of damages on that account. His negligence consisted in failing to observe the rule to compare his order with that of the conductor. The jury evidently regarded this to be a grave neglect as it found that it contributed to the wreck and injury and warranted the imposition of a penalty of $7,000. Now there could be no contributory negligence on the part of the plaintiff if the order given to him was the same as that held by the conductor, and if both named Douglass as the passing point. A comparison of them in that case would not have avoided the collision. In finding that plaintiff was negligent the jury necessarily found that the orders did not correspond and that the difference would have been developed by a comparison. The finding that he was negligent in this respect and that his negligence contributed to the wreck, was in effect a finding that Rock was the passing station named in the conductor's order, and yet in answer to question 9 the jury found that the evidence did not show what was written in the conductor's order. The findings of the jury are therefore in conflict with the verdict, part of them are inconsistent with the theory upon which a recovery is sought, and are inconsistent with each other.

The judgment is therefore reversed and the cause remanded for a new trial.