[L. A. No. 7521. In Bank.—July 5, 1923.]

WESTERN INDEMNITY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT — TEMPORARY AND PERMANENT DISABILITY—CHANGE OF AWARD FROM ONE TO THE OTHER.—In this proceeding to annul an award of the Industrial Accident Commission under the provisions of the Workmen's Compensation, Insurance and Safety Act, it is held that under the state of the case as shown by the record and the law the Industrial Accident Commission had the authority to change the award from a permanent disability payment to a temporary disability payment.

[2] ID.—INDUSTRIAL ACCIDENT COMMISSION—CONTINUING JURISDICTION. The power of the Industrial Accident Commission to allow a temporary disability payment in lieu of a permanent disability payment is a power which, from the nature of the object to be accomplished, must be a continuing power and within the scope of continuing jurisdiction for which provision is made by the act; otherwise the act, in part at least, would be self-destructive.

APPLICATION for a Writ of Review to annul an award by the Industrial Accident Commission for compensation for injuries. Award affirmed.

The facts are stated in the opinion of the court.

Jennings & Belcher for Petitioner.

A. E. Graupner for Respondents.

SEAWELL, J.—This is an application for the annulment of an award made by the Industrial Accident Commission of this state under the provisions of the Workmen's Compensation, Insurance and Safety Act. (Stats. 1917, p. 831.)

Respondent, Leo Vane, employed as an autotruck driver by the Floribel Farm and Cattle Company, a corporation, was injured June 15, 1918, in the course of his employment

1. Right and extent of review of findings of Industrial Accident Commission, notes, **Ann. Cas.** 1916B, 475; **Ann. Cas.** 1918B, 647; **L. R. A.** 1916A, 163, 266; **L. R. A.** 1917D, 186.

and while engaged in an attempt to set in motion the engine of said autotruck by rotating the starting crank. The engine "backfired," suddenly setting in motion the starting crank, which struck his right arm with great force, fracturing the radius of the right (major) forearm. The employer, Floribel Farm and Cattle Company, carried a policy of insurance with the Western Indemnity Company, petitioner herein. Shortly after said injury was inflicted respondent was taken to the city of Los Angeles and placed in the care of a physician, appointed by petitioner, for treatment. Two operations were performed by said physician, including bone grafting, but neither operation seemed to have resulted satisfactorily. The fractured bone refused to unite. This caused a deformity of the injured member and affected the free use of the wrist, thumb, and fingers. It also resulted in the shortening of the injured arm to the extent of one inch and a fraction. During the last stages of treatment, which extended over a period of about four years, upon the request of respondent, a change of physicians was granted by the Commission. Two other operations were subsequently performed by a physician skilled in the treatment of fractured bones. As a result of these operations the fractured bones became solidly united and the impaired condition of the hand and wrist were greatly restored.

The record shows that respondent filed on February 7, 1921, with the Industrial Accident Commission an application for the adjustment of his claim. It is stated therein that a permanent disability rating of 30.3 per cent had theretofore been made. This rating entitled respondent to receive as compensation a weekly payment of $16.67 for a period of 123 weeks, totaling $2,060.41. The payment of this sum, together with payments in full for medical care and attendance, was acknowledged. The primary purpose of the respondent seems to have been to obtain from the Commission an order for another operation to relieve him from the ill effects of the injury. The statement of facts in support of the application is, in part, "that a permanent disability rating of 30.3% or 123 weeks at $16.67 was given applicant for one inch shortening of right (major) radius, limited motion of thumb and wrist; partial loss of grasping power and deformity. The rating has

been paid out. It is now claimed that there is nonunion of the radius, remedial by operative treatment.'' This application was resisted on the ground that respondent had been paid in full for a permanent disability rating of 123 weeks and that full medical, surgical, and hospital treatment had been furnished; that two operations had been performed, including a bone graft, and that it was the opinion of the operating surgeons that it would be of no benefit to respondent to operate on his arm further; that, so far as the fracture was concerned, his arm was in an apparently satisfactory condition.

On May 17, 1921, the Commission found that the injury had resulted in a permanent disability the extent of which could not then be determined. It further found that there existed an ununited fracture of the right radius with deformity at the wrist producing restricted motion of the wrist and hand and that an operation would probably reduce the same as outlined by the reports of physicians in the case. The operation was ordered and accordingly performed at the expense of petitioner. The employer was released from liability thereon.

On May 22, 1922, the application of respondent requesting that a rating of permanent disability be made and that the findings and awards theretofore made be amended accordingly was granted without opposition. The commission found that the injury had caused a permanent disability equal to 30.75 per cent of total disability, amounting to $2,040.50, which sum had been paid, and it ordered that ''applicant take nothing further by reason of his injury forming the basis of this proceeding.'' On the following day, to wit, May 23, 1922, respondent petitioned for a rehearing. This petition was based on the ground that the evidence did not support the findings and that respondent had discovered new evidence which he could not with reasonable diligence have discovered and produced at the hearing. It was also urged as a ground for rehearing that he ''had no notice of the amount of the permanent disability rating which was to be given him and had no opportunity of showing to the Commission what the period of temporary disability was.'' He also claimed that he was unable to do any work from the day he received the injury, to wit, June 15, 1918, to the day the petition was filed, to wit, May 22,

1922. The injury with its resultant effects following surgical operations performed at various times in an effort to unite the fractured radius and severed tendons during the period of disability are described and declared to have rendered respondent totally unable to perform any kind of work. The prayer of the petition was that the period of temporary disability be definitely determined and that the award be based on *temporary* disability instead of *permanent* disability for the reason that an award based on the first ground would exceed the award made for permanent disability. The petition for a rehearing was granted on the ground that the evidence did not justify the findings as to the character of disability sustained inasmuch as a temporary disability payment would exceed the award made for permanent disability. After contest had the Commission filed its decision October 13, 1922, by which it was found that the injury inflicted upon the respondent caused a temporary total disability extending from the day of injury to and including May 22, 1922, and that said injury also resulted in a permanent partial disability as set out in the amended findings. It further found that the period of payment for said temporary total disability and the amount of compensation due therefor exceeded the period of payment and the amount of compensation for permanent partial disability and that respondent was entitled to the greater payment. Said findings and award of May 22, 1922, were amended by adding thereto a finding that the injury caused temporary total disability dating from the date of injury to and including May 22, 1922, entitling respondent to a weekly payment of $16.67 for a period of 203 6/7 weeks, amounting to the sum of $3,398.30, of which sum $2,050.41 had been received by respondent. In other words, respondent was awarded the sum of $1,347.89 as unpaid compensation for temporary disability suffered in addition to the amount found to have been received by him as compensation for said injury by the findings and award filed May 17, 1921. The moneys previously paid were treated as a credit on account of temporary disability payments.

By the application filed February 7, 1921, the only relief sought was an order for a surgical operation. It was specifically so stated in the following language: "Question: Whether operation should be resorted to to relieve from the

effects of the injury, a permanent disability rating having been made and paid out?''

Prior to the filing of said application the permanent disability rating department of the Commission made on November 30, 1920, the following entry of record: ''Digest: One inch shortening of the radius of major forearm; limited motion of thumb and wrist; partial loss of grasping power and deformity. 30.75 per cent, 123 weeks at $16.67 per . week.'' This order seems to furnish the original ground or basis for the claim that a finding of permanent disability had been made. It was carried into both the petition requesting further operative treatment and the order granting said treatment contains a statement or recital that the injury had resulted in permanent disability the extent of which could not then, to wit, May 17, 1921, be determined but that probably the injury would be materially decreased by surgical operation.

Respondent's condition seems to have baffled medical skill. Eminent surgeons disagreed as to whether he would be improved by another operation. There is but little of definiteness expressed in the testimony or reports of experts with respect to the extent of the injury. It seems quite certain that whatever use respondent was able to make of the injured member prior to the operations performed pursuant to the order of May 17, 1921, was totally lost, temporarily, at least, as the result of said operations, which, however, in the end, proved to have been wisely performed. He was sufficiently restored thereby in body to resume farm labor on May 24, 1922. As before stated, there was a decided difference of opinion shared by the medical profession, both as to the treatment that should be administered and as to the prognosis of the case. Two delicate operations of bone grafting had been performed. A supposedly united fracture had upon two occasions become loosened. Severed nerves and tendons caused new trouble. Under such circumstances it was practically impossible in the earlier stages of the injury for the Commission to determine with any degree of definiteness the extent or permanency of the disability.

The objections of petitioner have their origin entirely in the amendments to the award and findings made and entered May 22, 1922. By that amendment the disability

payments were changed from permanent to temporary disability payments. It is the contention of petitioner that the character of disability was unalterably fixed and determined by the order or findings made May 17, 1921, and no rehearing having been requested or ordered the matter had long since become final. The purpose and scope of the last-mentioned order has already been adverted to. The findings and award of May 22, 1922, which were subsequently amended over the objection and opposition of petitioner, were not objected to or opposed at any time before proposal or at the time of their adoption or since. It is the amendment thereto that is challenged. But do not the facts of the case present more than a mere question of the right of the Commission to amend its orders, findings, and awards as these matters ordinarily arise? Section 9 (8) of the Workmen's Compensation, Insurance and Safety Act provides as follows: "Where an injury causes both temporary and permanent disability, the injured employee shall not be entitled to both a temporary and permanent disability payment, but only to the greater of the two." **[1]** Under the state of the case as shown by the record and the law as written did the Commission have the authority to change the award from a permanent disability payment to a temporary disability payment? Petitioner contends that it had no such right. If this contention be sound the section last above cited would in many cases be rendered inoperative, and the right of an injured employee to avail himself of its benefits would be dependent upon the ability of the Commission to foretell the result of an injury from the beginning and in advance of all possible future developments. The present case illustrates the injustice that might be done should an interpretation be given to the act which would hold an injured workman to a rating which thereafter is proved to have been prematurely and erroneously made. The award here complained of was made within the limits of the statutory period, to wit, 245 weeks from the date of the injury, and we are of the opinion that the case falls within the provisions of the act by which the Commission is granted continuing jurisdiction over all its orders, decisions, and awards. After an opportunity to be heard has been had and good cause appearing therefor the Commission may rescind, alter, or amend any order, decision,

or award made by it. The right is reserved to it to review, grant, or regrant, diminish, increase, or terminate, within the prescribed limits of the act, any compensation awarded, upon the ground that the disability of the person in whose favor such award was made has recurred, increased, diminished, or terminated. Any order, decision, or award rescinding, altering, or amending a prior order, decision, or award can have the same effect as is provided for original orders, decisions, or awards. (See section 20 (b) of said act.)

[2] We are persuaded that the power of the Commission to allow a temporary disability payment in lieu of a permanent disability payment is a power, which, from the nature of the object to be accomplished, must be a continuing power and within the scope of continuing jurisdiction for which provision is made by the act. Otherwise the act, in part at least, would be self-destructive.

But aside from what has been said on the subject of continuing jurisdiction it is by no means certain that the act requires a formal application to be made on the part of an injured employee to entitle him to a change from one kind of disability classification to another if such change is for his benefit. The act seems to indicate that it is the duty of the Commission to make such a change whenever the facts before it clearly disclose that a change would be beneficial to the employee. The language of the statute is that the employee, when the injury causes both a temporary and a permanent disability, "shall not be entitled to both a temporary and permanent disability payment but *only to the greater of the two.*" (Italics ours.) Thus it is seen that the larger amount is awarded by force of the statute itself. There is no denial of the fact that the temporary disability payments exceed the permanent disability payments. The weekly amounts in each instance are the same, the advantage of a temporary disability payment being accounted for by the greater period over which it extends.

No question of the violation of the provisions of paragraph (c) of section 17 of the act under consideration, which provides that there shall be but one cause of action for each transaction coming within the provisions of the act, and that certain claims may be joined in the same proceeding, is here involved as contended for by petitioner. There was but one injury suffered and but one action

brought to recover compensation therefor. There is no room to urge laches against respondent. The rules announced in the cited cases, *Ehrhart* v. *Industrial Acc. Com.*, 172 Cal. 621 [Ann. Cas. 1917E, 465, 158 Pac. 193], *Georgia Casualty Co.* v. *Industrial Acc. Com.*, 177 Cal. 289 [170 Pac. 625], are not in conflict with any principle of law announced here. In the instant case no claim is made that respondent suffered two distinct injuries, one of which was not mentioned or investigated until after the statutory time had run against it, but for which compensation nevertheless was allowed; neither do the facts and method of procedure, as shown in the case last above cited wherein the Commission, after the denial of a petition for rehearing, annulled the original award and made an award not predicated upon any new facts occurring since the original award was made but which was based solely upon a reconsideration of the facts upon which the former award was made, present a case analogous to the one at bar.

If the order made May 17, 1918, is in legal effect a finding and award, as claimed by respondent, then beyond question sufficient new facts have arisen in this case, but which were absent in *Georgia Casualty Co.* v. *Industrial Acc. Com., supra,* to sustain the final award made October 13, 1922. If, on the other hand, said order of May 17, 1918, did not amount to an award, the Commission was not concluded by it and the final award was authorized.

The cases cited to sustain petitioner are totally different in material respects from the facts constituting the instant case and the provisions of law relied upon to sustain those cases are not repugnant to the conclusion we have reached in the case at bar.

The award is affirmed.

Lennon, J., Lawlor, J., Myers, J., Waste, J., Wilbur, C. J., and Kerrigan, J., concurred.