# SZYMON POLUCHA, Respondent, v. HERBERT E. LANDES, Appellant.

(233 N. W. 264.)

160

Opinion filed November 25, 1930.

*L. J. Palda, Jr., C. E. Brace, Robert W. Palda, E. R. Sinkler, G. O. Brekke,* and *H. H. Cooper,* for appellant.

*B. H. Bradford,* for respondent.

## Statement of Facts

BIRDZELL, J. On April 22, 1927, the plaintiff was injured while working in a mine operated by one Johnson who had fully complied with the workmen's compensation act. He was taken to a hospital in Kenmare for treatment. An examination was made which showed a fracture of the ankle bone or astragalus. About three days thereafter an operation was performed by the defendant in the course of which the astragalus was removed. The plaintiff filed a claim with the workmen's compensation bureau which was received May 7, 1927, showing the fracture of the astragalus and its removal. This was shown both in the first notice of injury and preliminary application signed by the plaintiff and in the accompanying report of his attending physician, Dr. Fisk. The plaintiff spent several months in the hospital at Kenmare and later came to a hospital in Bismarck where he received further treatment. On his application the workmen's compensation bureau made two awards. The first award was based upon a twenty-five per cent permanent partial disability of the left foot for a period of 45.5 weeks for which he was to receive $14.17 per week for a period of 45.5 weeks. The bureau also paid hospital and medical services, including the fee of the defendant, and made a supplemental award dated December 12, 1928, reciting as follows: "Whereas the medical evidence filed in the case of Szymon Polucha, Kenmare, North Dakota, indicates that the injury that he sustained on April 22, 1927, has resulted in fifty per cent permanent partial disability of the left foot, and whereas, the claimant, under the bureau's order of January 4, 1928, was awarded compensation for twenty-five per cent permanent partial disability of the left foot, there is, therefore, due him compensation for additional twenty-five per cent. . . ." The resolution then proceeded to award the additional twenty-five per cent. A little more than a year thereafter the present action was brought to recover damages on account of the removal of the astragalus predicating liabil-

ity upon malpractice in the diagnosis, treatment and operation. The negligence alleged consisted in the failure to diagnose the fracture as a simple fracture without complications and in failing to attempt to reduce the fracture by manipulation and other common and ordinary means not involving an operation for the removal of the bone. It is also alleged that such operation was improper treatment. To the complaint the defendant filed a general denial and as a separate defense pleaded the steps taken by the plaintiff immediately after the injury to secure compensation under the workmen's compensation law and the awards made; that the plaintiff had retained the full benefit of such awards and that under the workmen's compensation act the plaintiff's cause of action, if any, is by operation of law assigned to the compensation bureau which has become subrogated to any rights the plaintiff may have or claim against the defendant, such as alleged in the complaint. Upon the trial of the action the court excluded much of the proof offered in support of this defense. The jury returned a verdict of $4,300.00 and from the judgment entered thereon and from an order of the trial court denying the defendant's motion for judgment notwithstanding the verdict, the defendant appeals to this court.

## Opinion. .

The appellant argues (1) that the evidence is insufficient to sustain the allegations of negligence and (2) that the record shows the plaintiff to have sustained an injury in the course of his employment for which compensation has been allowed, including in such award any aggravation thereof which might have been due to negligent treatment by the defendant. From this latter premise it is argued that the plaintiff has no cause of action against the defendant. In the view we take of the case the second contention is decisive of the instant appeal and it will, therefore, be unnecessary to review the evidence to determine its sufficiency or insufficiency to prove negligence.

At the outset it must be conceded that the plaintiff's rights are governed by the workmen's compensation act. He was insured within the law. He was engaged in a hazardous employment and was injured while so engaged. The first section of the law declares that for workmen so injured sure and certain relief is provided (§ 396a1, 1925 Sup-

plement to the Compiled Laws of 1913) "to the exclusion of every other remedy, . . . except as otherwise provided in this act; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this act provided." We must, therefore, look to the act to determine what rights the plaintiff has under the facts disclosed in the instant case. It will be noted first that the sure and certain relief provided and which the plaintiff received was given apparently as a substitute for every other remedy and that civil causes of action, except as provided by the law, for personal injuries in such cases are abolished. The primary question in the instant case is whether or not the remedy sought by the plaintiff against the fund and which has been made available to him operates to deprive him of the further remedy he now seeks against a third person.

Since the law purports to substitute relief under it for any cause or causes of action through which a claimant might have obtained damages at common law for his personal injuries, we may well look to the scope of the possible common law remedy against the employer in determining the extent of the compensation authorized as a substitute. At common law one liable to respond in damages, as employers frequently were for personal injuries sustained by employees, is held liable in damages for the injury, including any aggravation thereof due to the mistake of the physician or surgeon selected by the injured person in the exercise of due care for the purpose of treating the injuries and thus minimizing the damages. The aggravation in such cases is not deemed to be the fault of the injured person but is regarded in law as a consequence of the original fault of the defendant. It is, therefore, not such an independent, intervening act of a third party as to break the chain of causation between the primary injury and the ultimate consequence or result. Many cases might be cited in support of this rule, but the following are sufficient to indicate its wide and general acceptance. Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359; Boa v. San Francisco-Oakland Terminal R. Co. 182 Cal. 93, 187 Pac. 2; Dewhirst v. Leopold, 194 Cal. 424, 229 Pac. 30; Ross v. Stamford, 88 Conn. 260, 91 Atl. 201; Wright v. Blakeslee, 102 Conn. 162, 128 Atl. 113, 25 N. C. C. A. 909; Chicago City R. Co. v. Cooney, 196 Ill. 466, 63 N. E. 1029; Variety Mfg. Co. v. Landaker, 227 Ill. 22, 81

N. E. 47; Suelzer v. Carpenter, 183 Ind. 23, 107 N. E. 467, 8 N. C.
C. A. 485; Doran v. Waterloo, C. F. & N. R. Co. — Iowa, —, 147 N.
W. 1100; McIntosh v. Atchison, T. & S. F. R. Co. 109 Kan. 246, 198
Pac. 1084; Hooper v. Bacon, 101 Me. 533, 64 Atl. 950; Gray v. Boston
Elev. R. Co. 215 Mass. 143, 102 N. E. 71, 8 N. C. C. A. 602; Burns's
Case, 218 Mass. 8, 105 N. E. 601, Ann. Cas. 1916A, 787, 5 N. C. C. A.
635; Goss v. Goss, 102 Minn. 346, 113 N. W. 690; Fields v. Mankato
Electric Traction Co. 116 Minn. 218, 133 N. W. 577; Pederson v. Ep-
pard, — Minn. —, 231 N. W. 393; Scholl v. Grayson, 147 Mo. App.
652, 127 S. W. 415; Smith v. Kansas City R. Co. 208 Mo. App. 139,
232 S. W. 261; Yarrough v. Hines, 112 Wash. 310, 192 Pac. 886;
Fisher v. Milwaukee Electric R. & Light Co. 173 Wis. 57, 180 N. W.
269; Retelle v. Sullivan, 191 Wis. 576, 50 A.L.R. 1106, 211 N. W.
756; Texas & P. R. Co. v. Hill, 237 U. S. 208, 59 L. ed. 918, 35 S. Ct.
575; 1 Sedgw. Damages, 9th ed. § 211b.

The workmen's compensation law gives to the workman his remedy
against the fund regardless of fault (Fahler v. Minot, 49 N. D. 960,
194 N. W. 695), but it also relieves a complying employer "from all
liability for personal injuries or death sustained by his employee" and
gives the persons entitled to compensation "recourse therefor only to
the North Dakota workmen's compensation fund and not to the em-
ployer." (Section 396a6.) Is it intended that the law shall give to
the employee of an insured employer a remedy against the fund as
broad as the common law remedy against an employer at fault limited
in amount, however, according to the schedule provided? In other
words, may an employee of an insured employer recover compensation
under the act for an injury sustained in the course of his employment
as aggravated by the negligence of a physician or surgeon employed
by the bureau or reasonably employed by him?

An injury to be compensable under the act must be one arising in
the course of employment. (Section 396a2.) It is conceded that the
original injury in the instant case is one which arose in the course of
employment and hence was a compensable injury. Where an injury
is compensable, compensation is directed to be disbursed under § 396a3.
The first duty under this section is (A) to immediately "furnish to
such employee such medical, surgical and hospital service and supplies
as the nature of the injury may require." Then (C) "If the injury

cause total disability" or (D) "If the injury cause temporary partial disability" or (E) "If the injury cause permanent partial disability," compensation is to be disbursed according to the appropriate schedule provided for such disabilities; and (G) "If death results from an injury within six years," compensation is payable to the personal representatives. In determining whether an injury is compensable, an essential fact to be found is that it arose in the course of the employment, but in determining the extent of the compensation the statute directs the bureau to consider the degree of physical impairment *caused* by the original injury. If there be no such break in the chain of causation that a given result must necessarily be referred to a subsequent, independent cause, it may be so directly connected with the original injury as that it may be said to have been caused thereby. Hence, the specific question before us may be stated as follows: Where through improper treatment of a physician or surgeon, either one whose services are recognized as having been furnished in circumstances creating a liability against the fund therefor or one employed by the injured person himself, the original injury is aggravated and the disability increased beyond that which would have resulted had proper remedial or corrective measures been applied, is the result one for which compensation is directed to be made by the bureau or is the injured person compelled to seek redress only in the courts against the negligent physician or surgeon? We have held in Watland v. Workmen's Comp. Bureau, 58 N. D. 303, 225 N. W. 812, that the bureau as such or as an agency of the state is not subject to suit on account of damages alleged to have been sustained through negligent or improper action by the bureau, and it is difficult to see how the principle of respondeat superior can be made applicable to the bureau on account of its employment of a physician without in effect holding that it is subject to liability for its negligence. If the injured person has recourse against the fund, therefore, for an injury thus aggravated, it is because the bureau is directed to disburse the fund to compensate him for the full extent of his injuries and not because it ratified the employment of the physician or surgeon.

In construing the Washington law, which is closely analogous to the provisions of our law above referred to, the supreme court of Washington in Ross v. Erickson Constr. Co. 89 Wash. 634, 647, L.R.A.

1916F, 319, 155 Pac. 153, 158, said: "The law is grounded upon the theory of insurance against the consequence of accidents. The question is not whether an injured workman can recover against any particular person, but rather: Is his condition so directly or proximately attributable to his employment as to invoke the benevolent design of the state? In construing statutes, courts have always looked to possible consequences as an efficient aid in clearing doubts. It surely was not the intention of the legislature to leave it to the commission to apportion the compensation allowed by the state with some fancied judgment that might be rendered in a potential suit brought against the attending physician, or to encourage a settlement for a lesser sum than the amount really due by holding out the hope or suggestion that the claimant had a cause of action against a surgeon."

Authorities strictly in point upon the interpretation of our workmen's compensation law touching the question in hand are not to be found, but the trend of authority under similar laws will, we believe, be found to support the statement made by the annotator in 39 A.L.R. 1276, wherein he says:

"Both in England and this country, under the various workmen's compensation acts, the rule seems to be that an injured employee may recover compensation for a new injury, or an aggravation of his injury, resulting from medicinal or surgical treatment of a compensable injury, when there is no intervening independent cause to break the chain of causation between the new injury, or aggravation, and the original injury."

No reason is apparent to us why a condition that in common law actions for negligence is said to result proximately from the original injury may not also be said to *result* from the original injury in compensation cases, especially since the statute specifically authorizing the compensation to be paid considers the *results* rather than the original injury as the basis for compensation. There is no reason why one rule of causation should be applied in negligence cases at the common law and another rule in compensation cases. As was said by Rugg, Ch. J., in the case of Sponatski's Case, 220 Mass. 526, 531, L.R.A.1916A, 333, 108 N. E. 466, 468, 8 N. C. C. A. 1025: "If the connection between the injury as the cause and the death as the effect is proven, then the dependents are entitled to recover even though such a result

before that time may never have been heard of and might have seemed impossible. The inquiry relates solely to the chain of causation between the injury and the death. . . . In deciding whether the chain of causation between the injury and the death is broken by the intervention of some independent agency, the rule of Daniels v. New York, N. H. & H. R. Co. 183 Mass. 393, 62 L.R.A. 751, 67 N. E. 424, is to be followed under the workmen's compensation act as well as in other cases to which the rule is applicable." And in Burns's Case, 218 Mass. 8, 11, 105 N. E. 601, 602, Ann. Cas. 1916A, 787, 5 N. C. C. A. 635, a compensation case, the court applied the test employed in negligence cases, quoting from McDonald v. Snelling, 14 Allen, 290, 92 Am. Dec. 768, as follows: "The test is to be found, not in the number of intervening events or agents, but in their character and in the natural and probable connection between the wrong done and the injurious consequence." And it was said that the intervention of the volition of human beings does not make the result so remote from the original cause as not to be attributable to it.

It seems that the workmen's compensation law of California which fixes liability upon the employer or an insurance carrier is applied to like effect. In Salvatore v. New England Casualty Co. 2 Cal. Ind. Acci. Comm. 355, cited in 11 N. C. C. A. 760 note, it was said:

"An industry is liable for all legitimate consequences following from an accident, among which consequences affecting the extent of disability is the possibility of an error of judgment or unskillfulness on the part of any attending physician, whether called in by the employer or the employee."

In Stockwell v. Waymire, 1 Cal. Ind. Acci. Comm. 225, cited in 11 N. C. C. A. 760, 761 note, it was even held that where an injured employee who had received an injury to an eye had been treated by an incompetent physician—one not licensed to practice in the state—he was entitled to compensation for the loss of the eye through such improper treatment.

In Phillips v. Holmes Exp. Co. 229 N. Y. 527, 129 N. E. 901, a claimant under the workmen's compensation law of New York who had received a fracture of the right forearm while cranking a motor car returned to work and while again attempting to crank a car the fracture rebroke. Meanwhile the employer had secured a new insur-

ance carrier. The question was which insurance carrier was liable. It was held that the first insurer sustained the entire liability.

In Pawlak v. Hayes, 162 Wis. 503, L.R.A.1917A, 392, 156 N. W. 464, 11 N. C. C. A. 752, it is said that an employer under the Wisconsin workmen's compensation act, being bound to furnish a physician and being liable for the value of his services, is impliedly liable for any aggravation of the injury caused by the negligence of the physician treating the employee and that the physician is also liable.

In the English case of Brown v. Kent, [1913] W. C. & Ins. Rep. 639, 641—C. A., where one who had sustained a minor injury to his knee necessitating a slight operation contracted scarlet fever while in a hospital and as a result of the scarlet fever infection a permanent incapacity of the knee developed, the court of appeals, in reversing the decision of the county court adverse to the workman, concluded:

"The result is necessarily that the incapacity is the result of the accident to the knee, although probably aggravated by the scarlet fever. This entitles the workman to compensation for the accident, on the footing that the incapacity caused by it is continuing. . . . If the incapacity is the result of the accident, the chain of causation remains unbroken, although a fresh cause arising casually and 'uninvited' by any special condition of the workman may have aggravated the original injury."

See, also, Lincoln Park Coal & Brick Co. v. Industrial Commission (Drengwitz v. Lincoln Park Coal & Brick Co.) 317 Ill. 302, 39 A.L.R. 1270, 148 N. E. 79, 24 N. C. C. A. 193; Spelman v. Pirie, 233 Ill. App. 6; Oleszek v. Ford Motor Co. 217 Mich. 318, 186 N. W. 719; Booth & Flinn v. Cook, 79 Okla. 280, 193 Pac. 36; Sarber v. Ætna L. Ins. Co. (C. C. A. 9th) 23 F. (2d) 434; Roman v. Smith (D. C.) 42 F. (2d) 931.

The reasoning of the case of Ruth v. Witherspoon-Englar Co. 98 Kan. 179, L.R.A.1916E, 1201, 157 Pac. 403, which is apparently to the contrary, does not impress us as being applicable under the provisions of our law and the same may be said of the case of Ellamar Min. Co. v. Possus, 159 C. C. A. 474, 247 Fed. 420. In these cases attention seems to be directed solely to whether or not the *aggravation* occurred in the course of the employment and not to whether it should be viewed as a proximate result of the original injury.

We are of the opinion that a workman injured in the course of his employment and thereafter sustaining an aggravation of his injuries due either to the act of the physician employed by the bureau or to a physician reasonably employed by him, is entitled to compensation from the fund for the injuries sustained as so aggravated. Any other construction of the act, instead of providing the employee that sure and certain relief which the law has designed for his protection, would render him subject to the uncertainties of litigation for so much of his injuries as might be traceable to the negligence of his physician or surgeon and to the further contingency of the latter's financial responsibility. It would prevent the administrators of the workmen's compensation fund from using it to compensate fully those whose injuries are traceable to their employment and would make the employee carry to a larger extent than formerly the risk incident to professional care which is made necessary by personal injuries sustained in the course of employment. Furthermore, such a construction would work this peculiar result; it would relieve a non-complying employer of a portion of his common law liability for the consequences of his tort. Under § 396 all of the act employers failing to comply with the law are deprived of the benefits of the act and are expressly declared to "be liable to their employees for damages suffered by reason of injuries sustained in the course of employment," etc., and in any such action they are not to be permitted to avail themselves of the common law defenses of the fellow-servant rule, assumption of risk and contributory negligence. This apparently broadens, rather than restricts, the liability. We have held that employers are liable under this section regardless of fault. Fahler v. Minot, 49 N. D. 960, 194 N. W. 695, supra. Surely, a non-complying employer who might also be a tort-feasor was intended to be held liable upon fully as broad a basis as at common law for any aggravation of injuries which were originally sustained in the course of employment. There seems to be no intention expressed here to favor non-complying tortious employers by relieving them of a portion of their common-law liability. But if the narrow construction of the expression "injuries sustained in the course of employment" be adopted, such would be the result. This language is identical with that of § 396a2 making the fund liable for compensation where the employer has complied with the law, and the two expressions should be construed to

convey the same meaning in their respective settings. Results such as these, we believe, are contrary to the spirit and the purpose plainly manifested in our workmen's compensation law. In the instant case the plaintiff sustained an injury in the course of his employment and under the allegations of his complaint he had likewise suffered an aggravation thereof. For all such injuries compensation was sought and awards made. What is the effect of the awards thus made upon his cause of action, if any, against the surgeon for malpractice?

There is no provision in our workmen's compensation law that purports to relieve any person not an employer from the consequences of his negligent act. Hence, if the defendant be not relieved by the operation of the law, he remains liable; but he is not necessarily subject to suit at the instance of the compensated employee. Tandsetter v. Oscarson, 56 N. D. 392, 217 N. W. 660; Hagerstown v. Schreiner, 135 Md. 650, 109 Atl. 464; Davis v. Central Vermont R. Co. 95 Vt. 180, 113 Atl. 539.

Section 396a20 of the 1925 Supplement to the Compiled Laws of 1913 provides:

"When an injury or death for which compensation is payable under this act shall have been sustained under circumstances creating in some other person than the North Dakota workmen's compensation fund a legal liability to pay damages in respect thereto, the injured employee, or his dependents, may, at his or their option, either claim compensation under this act or obtain damages from or proceed at law against such other person to recover damages; and if compensation is claimed and awarded under this act, the North Dakota workmen's compensation fund shall be subrogated to the rights of the injured employee or his dependents to recover against that person, provided, if the workmen's compensation fund shall recover from such other person damages in excess of the compensation already paid or awarded to be paid under this act, then any such excess shall be paid to the injured employee or his dependents less the expenses and costs of action."

Not only does the act fail to relieve a tort-feasor, not the employer, from liability, but it expressly provides measures for realizing upon that liability, both in the interest of making the fund whole on account of the award and in the interest of the employee. This subrogation provision does not expressly confine the right of subrogation to a cause

of action against a third person for the *original* injury sustained in the course of the employment, but it subrogates the fund to any cause of action against a third person for a *compensable* injury. As has been demonstrated above, the injury, if any, caused by the malpractice of the physician is regarded as resulting from the original injury and is compensable under the law. Yet, it may be the subject of an independent suit (Pawlak v. Hayes, 162 Wis. 503, L.R.A.1917A, 392, 156 N. W. 464, 11 N. C. C. A. 752, supra; Pederson v. Eppard, — Minn. —, 231 N. W. 393, supra), but as it is an injury sustained in circumstances creating in some other person than the fund a legal liability to pay *damages* (not necessarily *all* the damages) in respect thereto, the employee has an option either to claim compensation under the act or to proceed at law against the tort-feasor to recover damages. And if compensation is claimed and awarded the fund becomes subrogated to the rights of the injured employee to recover against that person. Unless the fund be subrogated to the right of the injured employee, only a partial effect would be given to the manifest purpose that the fund should be made whole as far as possible at the expense of a tort-feasor responsible for the loss and injuries; for, since the employee, having obtained compensation which is the alternative to his right to recover damages, cannot pursue the action (Tandsetter v. Oscarson, 56 N. D. 392, 217 N. W. 660, supra) and thus obtain more than one satisfaction for his injuries, the wrong-doer who may be responsible for the major portion thereof would escape liability altogether. This statute, we believe, being remedial in character and being expressive of a clear purpose to make either the employee or the fund (depending upon whether the employee avails himself of the act) whole at the expense of a tort-feasor, should receive a liberal construction to the end that its primary intention be made effective.

In the case of Fisher v. Milwaukee Electric R. & Light Co. 173 Wis. 57, 180 N. W. 269, supra, the Wisconsin supreme court was confronted with an analogous situation in construing a statute permitting a defendant to apply for an order of the court making a third person a party defendant upon a showing that if he (the main defendant) be held liable in the action he would "have a right of action against a third person not a party to the action for the amount of the recovery against him." The statute contained a provision to the effect that it

should be liberally construed so that all closely related contentions might be disposed of in one action. In the Fisher Case the light company being sued for personal injuries filed a cross-complaint against a third party, a Dr. Rumph. It alleged that the injury sustained by the plaintiff was a Colle's fracture of the left wrist, which was easily remediable by ordinary surgical treatment; that although the defendant offered the services of competent physicians, the plaintiff rejected the same and secured the services of Dr. Rumph and that the latter so negligently and carelessly treated the plaintiff's injury that he caused a partial loss of the use of plaintiff's left hand and forearm, etc. The light company asked that if recovery be had against it for the injuries due to the alleged improper treatment it be permitted to recover of Dr. Rumph such damages as were in excess of those that would have followed the plaintiff's injury had she been treated with ordinary surgical skill. It will be noticed that the cause of action set forth in the cross-complaint was for only a portion of the damages which the plaintiff was seeking to recover of such cross-complainant and that the statute upon which the defendant relied authorized a third party to be brought in when the defendant would have a right against a third person "for the amount of the recovery against him." But the court said it could see no reason why the statute should not be so construed as to permit the trial court in its discretion to make an order bringing in the third party and it overruled a demurrer to the cross-complaint. The result of this construction, obviously, is that the one held liable for the entire injury is subrogated to the right of the injured person to recover a portion of the damages sustained from a third person. Pawlak v. Hayes, 162 Wis. 503, L.R.A.1917A, 392, 156 N. W. 464, 11 N. C. C. A. 752, supra; Retelle v. Sullivan, 191 Wis. 576, 50 A.L.R. 1106, 211 N. W. 756, supra.

In the case of Pawlak v. Hayes, supra, an action for malpractice was brought against the physician after an award had been obtained against the employer, but it was alleged in the complaint that after learning of the malpractice the employee ceased to receive payments from the employer under the award made and offered to return so much thereof as the court might adjudge. In commenting upon the provisions of the Wisconsin statute subrogating the employer against whom a claim is made for compensation to "any cause of action in tort

which the employee or his personal representatives may have against any other party for such injury or death," the court said that the employee might invoke the statutory remedy against his employer or the common law remedy against a third person "who by his negligence caused or *contributed to* his injury." (Page 505 of the state report, page 465 of the Northwestern Reporter.)

In Retelle v. Sullivan, 191 Wis. 576, 579, 50 A.L.R. 1106, 1107, 211 N. W. 756, 757, where the evidence tended to show that the result of the injury was largely the fault of the physician, the employer being nevertheless liable for the entire injury, it was held that a satisfaction given to the employer discharged the employee's cause of action against the physician, the court saying: "If, prior to such settlement with Allison (the employer), plaintiffs had a claim for damages against the defendant (a physician), such claim passed from them to Allison *or to his insurance carrier upon such settlement,* and since said transaction they have not had, and do not now have, any claim against the defendant." (Emphasis is ours.)

We are of the opinion that the language of the subrogation section of our statute, fairly construed to effect its remedial purposes, subrogates the workmen's compensation fund to any cause of action existing in favor of an injured insured employee against a physician for malpractice where he obtains an award from the fund for his injuries predicated upon the results of such alleged malpractice.

Of course, where the compensation paid is shown not to include any damages for the malpractice, a different question is presented. Viita v. Fleming, 132 Minn. 128, L.R.A.1916D, 644, 155 N. W. 1077, Ann. Cas. 1917E, 678; White v. Matthews, 221 App. Div. 551, 224 N. Y. Supp. 559. See, also, the very recent case of Pederson v. Eppard, — Minn. —, 231 N. W. 393, supra, where this distinction is pointed out by the Minnesota court.

Under the facts shown in the instant case, we are of the opinion that any cause of action the plaintiff might have had for malpractice passed to the workmen's compensation fund when the plaintiff as a claimant obtained his award. From this it follows that the trial court erred in denying the defendant's motion for judgment non obstante. Hence, the order and judgment appealed from must be reversed and the action dismissed. It is so ordered.

BURKE, Ch. J., and NUESSLE, and CHRISTIANSON, JJ., concur.

BURR, J. (dissenting in part). The majority opinion holds that in this case the plaintiff has no cause of action for alleged negligence of the defendant.

The juridical principle underlying such compensation laws as the one involved is a departure in many respects from principles heretofore established. As pointed out in State ex rel. Dushek v. Watland, 51 N. D. 710, 39 A.L.R. 1169, 201 N. W. 680, the injured employee does not receive the award from the Fund nor the determination of the extent of his employer's liability, because of the negligence of his employer, but because of conditions inherent in the industry. We said:

"It substitutes the principle of compensation for that of liability for fault."

See also Pace v. North Dakota Workmen's Comp. Bureau, 51 N. D. 815, 201 N. W. 348; Ross v. Erickson Constr. Co. 89 Wash. 634, L.R.A.1916F, 319, 155 Pac. 153. The injured·workman may recover, even if he be negligent himself so long as his injury is not wilfully self-inflicted, or received while wilfully inflicting an injury on another. Where the employer has complied with the requirements of the statute the injured employee as against him is relegated to his rights secured by the act. No matter what may have been his common law rights against his employer these are all abrogated except so far as specifically exempted by the law. In some respects the injured employee has increased rights; in others his rights are decreased. Where the employer has complied with the requirements of the statute then the injured employee as against the employer has recourse for his injuries "only to the North Dakota Workmen's Compensation Fund and not to the employer." Section 396a6 Supp. and this fund is distributed only to employees "who shall have been injured in the course of their employment—and such payment—shall be in lieu of any and all right of action whatsoever against the employer of such injured . . . employee. . . ." But not only must the injured workman show he was an employee, but he must also show that the injury for which he seeks compensation was received in the course of his employment. Because A may happen to be an employee of B does not give him a right to compensation unless he be injured in the course of employment.

Section 396a2 of the Supplement defines "Injury" and says: "'Injury' means only an injury arising in the course of employment—The term 'injury' includes in addition to an injury by accident, any disease proximately caused by the employment." I see no special force in the provision set forth in Section 396a3 Supp. providing rates for "total disability" "temporary partial disability" and "permanent partial disability." These terms refer to the injury received and the term "injury" must be interpreted according to the definition given in § 396a2 of the Supplement.

The injury for which the plaintiff seeks compensation in this case was not received in the course of his employment. It is claimed there is such causal connection between the injury involved in this action and the injury received in the course of the employment that the bureau must take it into consideration in awarding damages, and that the bureau did so. It is true that the law contemplates the injured employee shall receive compensation for any expense he was put to in the treatment of his injury and if he thereby incur doctor bills and hospital expenses he will be reimbursed therefor or the bureau will pay them. However, this means proper treatment; the treatment naturally expected—not negligence—and the bureau is bound by the usual practice of surgeons, and must pay for it; but the surgeon is not an insurer of his acts. His work is presumed to be beneficial to the injured workman, even if he can not restore him to his pristine condition.

But in the case involved here there is a new element entirely—the alleged negligence of the surgeon. Assuming there was such negligence then the surgeon was a tort-feasor. The injured employee always had a right of action against the doctor for malpractice. It is immaterial what right of action the employee had against the employer under the common law with reference to negligence of a doctor, for this was based on the negligence of the employer. He is not negligent in the purview of this statute. Compensation is not based on negligence. It is utterly immaterial to the employer whether the surgeon employed is guilty of malpractice or gives the very best service. The employer has nothing whatever to do with the selection of a doctor. He is in no way responsible for it. There is "concert neither in project nor in action" between the employer and the surgeon selected by the employee. They are not joint tort-feasors and certainly the servant has a cause

of action for aggravation of injury. See Viou v. Brooks-Scanlan Lumber Co. 99 Minn. 97, 108 N. W. 891, 9 Ann. Cas. 318.

As between the injured employee and the employer the recourse to the fund is a complete settlement, and is a settlement which is compelled by law; but, as said in Viita v. Fleming, 132 Minn. 128, L.R.A. 1916D, 644, 155 N. W. 1077, 1080, Ann. Cas. 1917E, 678:

"When it appears, as it clearly does here, that there is a liability on the part of the physician to the patient, it is a strain to hold that a settlement between the injured man and the wrong doer for the injury by the accident, whether made under the Compensation Act or outside of it, includes the claim that the injured man has against his physician for a separate and subsequent injury."

This was an action against the physician. The plaintiff was injured in the course of his employment, and the employer selected a competent physician to treat him. The opinion states the employer and the employee "agreed upon a settlement for the injuries received by plaintiff in the accident, and petitioned the court for its approval under the terms of the Workmen's Compensation Act. The court approved the settlement agreed upon, which contained a provision that, when all payments thereunder had been made, the 'employer shall be and hereby is released from all claims on account of said injury in said act or otherwise.' The claim here is that this settlement released the employer, and also the defendant, (the doctor) from all liability for negligence in the treatment of plaintiff's injury."

The court held any duty the employer owed the employee was discharged, when it selected a competent physician, but that the employer "was not liable to the employee for the negligence of the physicians. It was not required to compensate plaintiff for damages sustained by their malpractice and the settlement did not purport to include any such element." Under our law the compensation is not paid by the employer, it is paid by the bureau; but I see no reason why, in principle, settlement by the bureau should be considered settlement for the negligence of the physician under our law, and yet the employer be held not liable under the Minnesota law. The comment that "the settlement did not purport to include any such element" does not vary the principle. The employee is the only one who can waive his right against the physician. In Minnesota his settlement with the employer

was no waiver; neither is his settlement with the employer through the bureau in the instant case. Because he told the bureau the doctors removed the astragalus, and the bureau paid for medical service is no waiver by the employee. There must be something more definite than this to bind the unfortunate worker to a release of his rights. Why, in personal injury cases, even a settlement and compromise of personal injuries made deliberately is voidable while the injured person is "under disability from the effect of the injury so received," (§§ 5941a1 and 5941a2 Supp.) so well do we safeguard the interests of the injured.

In my view the subsequent case of Pederson v. Eppard, — Minn. —, 231 N. W. 393, does not vary this rule. The Minnesota court refers to the Viita v. Fleming Case and shows that the matter involved was an injury "under the Workmen's Compensation Act. The employer was not charged with negligence. It was bound under the Compensation Act to pay compensation. The compensation paid did not include damages for malpractice." The settlement with the employer said nothing about the claim against the physicians. They were neither included nor excluded in the settlement. They were not included in the settlement, and thus the settlement was no bar to the suit. Had they been included in the settlement then the injured man would have released them. If the bureau obligated itself to pay anything on the malpractice alleged it had the remedy in its own hand by review, instead of shutting out the injured workman from his undoubted right to recover a much larger compensation from the physician in the way of damages. Under the Compensation Act the employer is no longer a "wrong doer" but this does not alter the relationship between the injured employee and the doctor. Thus a settlement on behalf of the employer does not affect the other claim. In Ruth v. Witherspoon-Englar Co. 98 Kan. 179, L.R.A.1916E, 1201, 157 Pac. 403, an action had been commenced by an injured employee against his employer directly under the provisions of the Kansas Workmen's Compensation Act, and thereunder the employee is limited to recovery for injuries received "out of and in the course of his employment." The court held that "so much of an employee's incapacity as is the direct result of unskillful medical treatment, as such incapacity does not arise 'out of and in the course of his employment' within the meaning of that

phrase as used in the statute.—For that part of his injury his remedy is against the persons answerable therefor under the general law of negligence, whether or not his employer be of the number." The employer was not liable under the compensation act as for negligence, but "on the theory that it (the accident) should be treated as part of the ordinary expense of operation." But the negligence of the surgeon was a separate and distinct injury. The fact that under our law the workman is not limited to injuries received out of the employment; but may recover for any injury received in the course of employment does not affect the principle enunciated.

In Hoehn v. Schenck, 221 App. Div. 371, 223 N. Y. Supp. 418, the employee's application to the bureau "for injuries sustained in the course of employment" was held to be "no bar, on theory of election of remedies, to action for malpractice, against physician treating such injuries, any overpayment in compensation award, because of inclusion therein of damages arising from malpractice—being available by defendant in mitigation of damages." In White v. Matthews, 221 App. Div. 551, 224 N. Y. Supp. 559, it was held that the compensation received by the injured employee "was not based on negligence, or wrongful act, but merely on fact of injury alone, and recovery of compensation did not bar action for malpractice against physician, aggravating injuries which were entirely independent of injuries for which compensation was received." The lower court held that payment by the industrial commission was an absolute defense for the physician; but the Supreme Court held "the court below fell into the error of assuming that the proceeding to obtain compensation was an action for damages and that there were two tort-feasors. Plaintiff's claim for compensation under the workmen's compensation law was not based upon negligence, or any wrongful act or omission on the part of the plaintiff's employer. Compensation was sought and received by plaintiff upon the fact alone that when she sustained her injuries she was an employee of the women's hospital." The court then said "how therefore, can it be said that the plaintiff's employer and the defendant were joint tort-feasors? No part of the moneys received by plaintiff was for compensation for negligence, but was based alone upon the fact of employment." When the new element of malpractice enters however, the employee becomes vitally interested. Un-

der the theory of the majority opinion it is essential for the employee to very carefully distinguish between the classes of injury which he receives. He must differentiate between the injury received in the course of his employment—in this case the broken astralagus—and the alleged malpractice in the removal of the astralagus. He must inform the bureau that he is asking from it compensation for the first only, that he intends to sue the surgeon for the other act. Unless he does this he is shut out from recovery against the doctor.

But here is a separate and independent injury, not received in the course of the employment, but received after the employment. The holding of the majority would take away from the injured employee his right of action in such case. True, the injured employee in filing his application, showed that the astralagus had been removed and it is claimed that he thus submitted to the bureau the alleged negligence of the doctor, and the bureau compensated him therefor. Of course the injured employee stated to the bureau the full extent of the injury from which he was suffering. He would be unfair to the bureau if he did not. It is not for him to determine how far the bureau may go in compensating him; but it is his duty to give the bureau a fair statement of the condition in which he is at the time he makes his statement. The burden does not rest upon the injured employee to determine at his peril how much he must tell the bureau. The burden rests on the bureau to investigate the case, hold hearings, secure the testimony and protect the workmen's rights. The bureau determines the extent of its own jurisdiction in distributing the funds of the bureau. It knows it can allow only for injuries received in the course of employment, but it is for the bureau to determine this factor. The testimony in this case shows that whatever compensation the injured employee received was made "under the limitation of the Compensation Act." This is the statement of the only member of the bureau who testified. He did say the bureau "allowed for 50% of permanent partial liability at the time of the final supplemental award based on the condition existing then." But the bureau "did not take into consideration pain or suffering or anything of that kind." When the bureau says it will allow for the negligence of the doctor it is doing an injury both to the fund and to the injured employee. It is distributing a fund for matters outside of its province, and it is taking from

the employee his right of action against the doctor on the theory that he told the bureau about the removal of the astralagus and the bureau allowed therefor. This gives to the bureau,—a non-judicial body—the right of determining the extent of the negligence of the doctor, and allowing what it sees fit, instead of having the matter submitted to a jury.

It is claimed the bureau is subrogated to the rights of the injured employee against the physician. Under the provisions of § 396a20 Supp. "when an injury . . . for which compensation is payable under this act shall have been sustained under circumstances creating in some other person than the North Dakota Workmen's Compensation Fund a legal liability to pay damages in respect thereto, the injured employee, . . . may, at his . . . option, either claim compensation under this act or obtain damages from or proceed against such other person to recover damages; and if compensation is claimed and awarded under this act the North Dakota Workmen's Compensation Fund shall be subrogated to the rights of the injured employee . . . to recover against that person. . . ." This brings us back to the character of the injury for which compensation is payable. If the negligence of the physician be compensable the injury either must have been received in the course of the employment, or such negligence must be a factor considered such a natural and probable consequence flowing from the injury received in the course of employment as to be included therein, as the only injuries compensable are injuries received in the course of employment. The bureau is not subrogated to any cause of action for which it cannot be compelled to pay damages. Appellants cite the case of Tandsetter v. Oscarson, 56 N. D. 392, 217 N. W. 660. We held there that an injured employee could not recover from the bureau for injuries received in the course of his employment at the hands of a third person, and at the same time sue the third person. He could not do both. He could recover from the bureau for injuries received in the course of his employment whether inflicted by a third person or whether such as would otherwise have been considered to be a result of the negligence of his employer. In such case of a third person he could refrain from seeking compensation from the bureau, even though the injuries were received in the course of his employment, and he could sue the third person. He had

his choice. In order to give the bureau the right of subrogation we must consider the claim in two sections—the original injury received in the mine for which the bureau must pay compensation and for which it has no recourse against some one else, and the aggravation by the physician after the employment ceased and which is said to have such a causal connection with the original injury as to be included therein. With reference to the latter I take it the defendant claims the bureau is subrogated to the plaintiff's cause of action against him because it is said in stating his injuries he told how the astralagus had been removed and he claimed compensation therefor; and because it is said the bureau allowed for the acts said to be those of negligence. It is clear that the physician if liable at all is not liable for the whole injury in any event, but for the aggravation thereof. I take it the gist of the holding of the majority is that the plaintiff, if he wanted to pursue his right of action against the defendant, should have said to the bureau, in effect, I want you to pay me for the original injury only and I will sue the doctor for his negligence, and that, not having so done he lost to the bureau his right of action. I do not see how there can be subrogation.

I believe that in this particular case there should be a reversal, but the reversal comes from the failure to instruct the jury on a matter pertinent to the issue when written request was made therefor and the request contained a correct statement of the law applicable to the case—there being no instruction given as fully in equivalent language. The defendant asked for an instruction to the effect that he was not an insurer of his treatment and that the doctrine of res ipsa loquitur did not apply. I believe the court should have instructed the jury as requested; but that is a matter peculiar to this suit.

However, this does not affect the general principle involved. If the law set forth in the majority opinion be correct then it was immaterial what errors, if any, the trial court committed in the instructions. According to this decision the plaintiff has no cause of action whatever on this claim.