### 15240. HOTEL EQUIPMENT COMPANY *v.* LIDDELL.

1. Where an employee and an employer had both accepted the provisions of the workmen's compensation act (Ga. L. 1920, p. 167), the employee did not thereby lose his right of action against a third person as a wrong-doer causing his injury.

(*a*) Even assuming that the compensation paid under the act is in the nature of damages awarded for injury, an employee's acceptance of a certain sum thereunder for an injury would not altogether prevent his proceeding against such wrongdoer, unless the same was a full satisfaction for the injury under the general law as it existed prior to the act. The compensation act was not intended to give that measure of recompense.

(*b*) But the compensation provided thereunder is similar in character to benefits under an insurance policy, and its receipt by an injured employee can afford no ground upon which a third person who wrongfully inflicted the injury should escape liability, either wholly or in part.

(*c*) In such an action a plea in bar, upon the ground that the employee had received compensation from his employer under the compensation act, even if, in any view, otherwise sufficient, would be bad, in the absence of an averment that the injury arose out of and in the course of the employment.

(*d*) The above rulings are under the act as it existed prior to the amendment of 1922 (Ga. L. 1922, p. 185).

2. Where the owner of a truck and another jointly employ a chauffeur to operate the truck in the business of either, each contributing equally to the maintenance of the truck and the wages of the chauffeur, and where they both have equal rights to the use of the truck and the chauffeur is subject equally to the control of each, both or either may be held liable for an injury negligently inflicted by him upon another in the operation of the truck in the prosecution and within the business of either which was in contemplation of the three parties at the time of his employment.

3. The extract from the charge set forth in the third division of the opinion was not error as an unfair statement of the contentions of the parties.

(*a*) Other charges examined and held not prejudicial, though inapplicable. An irrelevant charge is not cause for a new trial unless it appears that the losing party was prejudiced thereby.

(*b*) It is not reversible error that the court *directed* the jury to consider the relationship of witnesses to the parties, instead of instructing them that they might do so.

(c) The jury were sufficiently instructed upon the law of negligence. It was not error to omit a definition of that term, in the absence of a proper request.

4. The evidence authorized a finding in favor of the plaintiff for some amount, and considering the verdict as one only for the injury and the incident pain and suffering, both past and future, and for expense incurred, it cannot be held, as a matter of law, that the amount awarded was so great as to show bias, prejudice, or mistake on the part of the jury.

DECIDED AUGUST 13, 1924.

Damages; from Fulton superior court—Judge Ellis. November 20, 1923.

*Bryan & Middlebrooks,* for plaintiff in error.

*Hewlett & Dennis,* contra.

BELL, J. On January 18, 1922, Thomas E. Liddell brought suit against Hotel Equipment Company, a corporation, for injuries sustained by him on September 17, 1921, when he was struck by an automobile alleged to have been owned by the defendant and to have been negligently operated by its employee in and about the defendant's business. The petition alleged that the plaintiff's injuries consisted mainly of the breaking of his left leg, but were generally to his entire body; that he had suffered great pain and that his injuries would be permanent, and that he had been put to certain expense for surgical treatment, hospital bills, and the like. He laid his entire damages at $25,000.

The defendant denied all the allegations of the petition except that it was a corporation, etc. The trial resulted in a verdict in favor of the plaintiff for $9,000. The defendant's motion for a new trial, containing the usual general grounds and a number of special grounds, was overruled, and the movant excepted. Exceptions are taken also to a judgment sustaining plaintiff's demurrer to a special plea in bar, to be referred to in the opinion.

1. The defendant specially pleaded in bar that the plaintiff at the time of the injury was an employee of the Standard Oil Company, and that both he and his employer had accepted the terms of the Georgia workmen's compensation act; that on account of his injury and before he filed suit against the defendant therefor the plaintiff claimed and received compensation from his employer in the sum of $637 in full settlement of his claim for compensation due him under the compensation act. By reason of these facts it was alleged that the plaintiff had no right to main-

tain an action against the defendant for the same injury. The plea was stricken on a general demurrer, but it was provided that the order was not intended to prevent the defendant from showing that the plaintiff was paid compensation by his employer under the compensation act.

Did the court err in striking the plea? Numerous cases have been cited by both parties. We have examined each of them most carefully, but will not undertake to review them in this opinion. Suffice it to say that in practically every one of the decisions cited by the plaintiff in error in which it was held that an employee, who had elected to claim compensation of his master under a compensation act, could not thereafter bring suit against a third person causing the injury, there were provisions in the statute under construction which do not appear in the workmen's compensation act of this State. There are decisions sustaining the right of the employee to sue the third person under such circumstances, where the act in the particular State, as is true in this State, did not expressly deny such right. There is one apparent exception to what we have stated with respect to the cases cited by the plaintiff in error, namely, a decision by the Supreme Court of Appeals of Virginia, to which we will refer a little later.

Section 12 of the compensation act of this State (Ga. L. 1920, p. 167) is as follows: "That the rights and remedies herein granted to an employee where he and his employer have accepted the provisions of this act respectively to pay and accept compensation on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise on account of such injury, loss of service or death." Prior to the amendment of August 16, 1922 (Ga. L., 1922, p. 185), there was no provision in the act for the subrogation of the employer, who had paid compensation for an injury, to the right of the employee against a third person who may have been liable. Such a provision was made by that amendment. Another provision of the amendment is that the employee or beneficiary may take proceedings for damages against the third person responsible for the injury and also against the employer for compensation, but that the amount of compensation to be had of his employer shall be reduced by the amount of damages recovered.

The cause of action in this case arose prior to the amendment. It is urged by the plaintiff in error, however, that the provision in the amendment for an action against a person other than the employer who brought about the injury should be taken as proof that no such right existed under the original act. "An expression of the views of the legislature [in one act or resolution] as to what they thought they had done [in a previous act] . . is a legitimate source to look to in determining the intention of the legislature in passing the [previous] act." *Georgia Penitentiary Co.* v. *Nelms,* 65 *Ga.* 68 (1), 69. There seem to us, however, to be weightier reasons for holding that the original act of 1920 was never intended to prevent an employee who had received compensation of his employer under the act from bringing suit against another person who would have been liable to him for his injury independently of the act. The original compensation act of this State is very similar in most of its terms to that of the State of Virginia. Section 12 of our act is identical with section 12 of the Virginia act. In Southern Railway Co. *v.* United States Casualty Co., 136 Va. 475 (118 S. E. 266),—the Virginia case mentioned above,—it was said that "under section 12 . . the employee to whom compensation was paid for personal injuries was debarred from pursuing all other rights and remedies on account of such injuries." The implication was that he could not sue a third person. The damage involved in that case, however, arose after the passage of an amendment whereby the employer was subrogated to the right of the employee, and might enforce the same in his own name in a suit against the person causing the injury. Section 12 was, of course, construed in the light of the amendment already passed. In other words, the amendment was of a character to modify the effect of this section as it existed before. We cannot, therefore, accept this decision as authority upon the question now before us.

In *New Amsterdam Casualty Co.* v. *Sumrell,* 30 *Ga. App.* 682 (2), 689 (118 S. E. 786), we said that "the compensation acts, though in derogation of the common law, being highly remedial in character, should be liberally and broadly construed to effect their beneficent purposes." But this language had reference to the application of the remedy as between the master and the servant, and not to the scope of the act with respect to others. With re-

gard to that, the general rule would be applicable, that statutes in derogation of common law and in contravention of the public policy of the State should be strictly construed. *Yancey* v. *Lamar-Rankin Drug Co.,* 140 *Ga.* 359 (2) (78 S. E. 1078); *Sheffield* v. *Bainbridge Oil Co.,* 3 *Ga. App.* 200 (2), 202 (59 S. E. 725). Repeals by implication are not favored. *Franklin County* v. *Crow,* 128 *Ga.* 458 (57 S. E. 784). To rule that the plaintiff is estopped to bring this action, merely because he *as to his employer* was subject to its provisions and was compensated thereunder, would be to say that the act of 1920 repealed the existing laws by which the defendant would have been liable for negligence, in so far as they related to persons receiving compensation under the act. In *Southern Ry. Co.* v. *Moore,* 133 *Ga.* 806 (1), 809 (67 S. E. 85, 26 L. R. A. (N. S.) 851), the Supreme Court approved the following principle: "A statute instituting a new remedy for an existing right does not take away a pre-existing remedy, without express words or necessary implication; the new remedy is cumulative, and either may be pursued." In that case the Supreme Court doubts the soundness of the decision of this court in *Pennington* v. *Douglas &c. Ry. Co.,* 3 *Ga. App.* 665 (3) (60 S. E. 485), cited and stressed by the plaintiff in error.

Section 12 does not by express language take away the right of an employee to sue the wrongdoer. Its terms can only mean that he and his employer are subject to the act and that he shall have no other remedy against his employer. Third persons are not concerned. An outsider does not share the burdens of the act, imposed upon the employer, and he is entitled to none of its benefits. It was never the purpose of this statute to place exclusive liability upon the master for injuries to his employees arising out of and in the course of the employment, and thus to grant immunity and license to others who were responsible for the injuries.

From what has been said,—all of which *assumes* that compensation paid under the act is in the nature of damages awarded for injury, an assumption under which we will for the present continue,—the question resolves itself merely into one of election of remedies. This perhaps is the real question which the plaintiff in error would raise. "A plaintiff may pursue any number of consistent concurrent remedies against different persons until he obtains a satisfaction from some of them." Civil Code (1910), §

5522. No matter what right the party wronged may have of selecting between remedies, or of pursuing defendants for the same cause of action, when he once obtains full satisfaction from one source his cause of action ends, and he cannot assert it any further anywhere. *McLendon* v. *Finch,* 2 *Ga. App.* 421 (3) (58 S. E. 690), and citations. In our view, the compensation laws were never intended necessarily to give full compensation for the injury done, as under the provisions of the Civil Code, § 4502, but attempt only a "partial recompense." Appeal of Hotel Bond Co., 89 Conn. 143 (93 Atl. 248). The defendant, if negligent, was liable under this section. Its liability was in no way affected by the compensation act, even under the theory now discussed, except to the extent of the satisfaction which the plaintiff received thereunder. If he had received from his employer the full measure of damages which he would have been entitled to recover of the defendant under this code section, that fact, under the assumption stated above, could have been pleaded by the defendant as a bar. The defendant did not allege that the plaintiff had received from his employer satisfaction for the injury to the extent that he himself would have been liable, but averred merely that he had received full and final settlement of the amount *allowable to him under the compensation act.*

But, departing now from the assumption that compensation under the workmen's compensation law is in the nature of damages awarded for injury, we are of the opinion that it is in truth like the benefits under an insurance policy. City of Austin *v.* Johnson (Texas Civ. App.), 104 S. W. 1181; Ohio Traction Co. *v.* Washington, 6 Ohio App. 273; 1 Honnold on Workmen's Compensation, 5, § 2; 1 Schneider's Workmen's Compensation, 1, § 1, and citations. Being of the nature indicated, its receipt by an injured employee can afford no ground upon which a third person who negligently inflicted the injury should escape liability, either wholly or in part. *Western & Atlantic Railroad* v. *Meigs,* 74 *Ga.* 857 (5); *Nashville &c. Ry. Co.* v. *Miller,* 120 *Ga.* 453 (3) (47 S. E. 959, 67 L. R. A. 87, 1 Ann. Cas. 210); *City of Rome* v. *Rhodes,* 134 *Ga.* 650 (68 S. E. 330).

We would willingly rest our decision here; but for still a further reason we are of the opinion that the plea was bad. It nowhere alleges that the plaintiff's injuries arose out of and in the course

of his employment. Madden v. Northern Pacific Ry. Co., 242 Fed. 981. The plaintiff would not be estopped in this action against the defendant to deny that his injury did so arise, merely because he may have received compensation from his employer under the provisions of the act, and unless the injury did so arise, what he received was only a gratuity, the acceptance of which could not in any view constitute a defense to the present action. *Western & Atlantic R. Co. v. Sellers,* 15 *Ga. App.* 369 (2) (83 S. E. 445) ; *Nashville &c. Ry. Co. v. Miller,* supra. No transaction between him and his employer could operate so as to estop him from asserting the truth as between him and the defendant, who was not a party to the transaction and could not have been misled or affected thereby. Civil Code (1910), § 5738. We conclude that the court did not err in striking the plea.

2. Special ground 4 of the motion for a new trial is as follows: "The court erred, as movant contends, in charging the jury as follows: 'If you find that the truck was the property of the defendant, or that the defendant had a joint ownership of it, and that the driver of it was the employee of the defendant, and that the driver of this automobile was negligent in his operation with the machine, and that this operation of this truck brought about this injury to the plaintiff, then you would find for the plaintiff, unless you believe that the plaintiff himself, by his acts and doings, brought on himself this trouble; or, that he was not in the exercise of ordinary care to avoid the negligence of the defendant after it existed,—that is, as soon as he knew of it,—or, in the exercise of ordinary care after he found that the defendant was negligent, if he was negligent, or in the exercise of ordinary care could have known of it and have avoided the consequences of defendant's negligence, if any existed.' Movant insists that such instruction was error, for the reason that it was misleading and did not correctly state the law applicable to this case, since it did not instruct the jury that the defendant would not be liable unless the truck was being operated at the time the plaintiff was injured by the defendant's employee or agent, *on an errand for the defendant or within the scope of the* [employee's] *agency.* Movant insisted throughout the trial of the case, and, as movant contends, the evidence showed, that the truck in question was owned by the defendant; that its upkeep, including the wages paid to the driver

of the truck, was paid by Luckie Manufacturing Company, a separate and distinct corporation, with a place of business several blocks away from defendant's place of business and the defendant; that on one side of the truck were painted the words, 'Hotel Equipment Company,' and on the other side of the truck were painted the words, 'Luckie Manufacturing Company;' that the defendant's business did not require the full use of the truck every day; that the truck was used some days and some times by Luckie Manufacturing Company and some days and some times by the defendant; that on the day and at the time the plaintiff was injured, the driver of the truck was using the truck at the direction of some officer of Luckie Manufacturing Company for the purpose of delivering furniture to Sterchi Furniture Company, a customer of Luckie Manufacturing Company; that at the time and on the day the plaintiff was injured the truck was not being used on any errand nor upon any business nor at the direction of Hotel Equipment Company, the defendant. Movant insists, therefore, that the instructions of the court, as set out in this ground of its motion for new trial, are prejudicial and harmful, and erroneous, inasmuch as the jury was instructed to find against the defendant if they believed that the truck was owned by the defendant and was being driven by an employee of the defendant. Movant insists that, inasmuch as the undisputed evidence in the case showed that the driver of the truck was employed jointly by the defendant and by Luckie Manufacturing Company, another corporation, and, inasmuch as the undisputed evidence, as movant contends, did show that the truck was not being operated by the defendant at the time the plaintiff was injured and was not being operated on any business or errand for the defendant, that this charge was extremely harmful to the defendant, in that it did not correctly state the law applicable to the defendant's contentions, raised by the pleadings and the evidence, and in that it misled the jury."

We state this ground in full as typical of a number of others, as to which our ruling in this connection will be controlling.

We will also set forth the entire testimony of Mr. Griffith, the vice-president of the defendant company, in the light of which our ruling will be made:

"My name is S. J. Griffith and I am vice-president of the Hotel Equipment Company. My business on or about September 17,

1921, was vice-president of the Hotel Equipment Company and vice-president of the Luckie Furniture Company and general manager of both. The Luckie Manufacturing Company manufactures furniture, and it was a corporation. I know a negro named John Williams, whom I knew for several years and he was a truck-driver for the Hotel Equipment Company and the Luckie Manufacturing Company in 1921 and part of 1920. I do not know where John Williams is now, but the early part of this year he came by our office, and I have made every effort to locate him. I do not know where he is now. In September, 1921, the Hotel Equipment Company and the Luckie Manufacturing Company had a White truck. The truck was owned by the Hotel Equipment Company and it was used for the business of the Luckie Manufacturing Company, too, and also by and for the use of Hotel Equipment Company. John Williams, whom I spoke of, worked for both; his salary was prorated by the two companies. The expenses of the truck was prorated by both companies. On or about September 17, 1921, I do know about what business this truck was engaged in. I did have supervision of this truck as general manager of the two companies and the instructions to the foreman of this truck was issued by me and to the shipping clerks of the two companies. I recollect the truck being involved in an automobile accident along about September 17, 1921, at Broad and Marietta streets, but I didn't see that, as it was just reported to me by an officer. About that time the truck was delivering furniture to the Sterchi Furniture Manufacturing Company for the Luckie Manufacturing Company. That truck was the only White truck we had down there operated by those two companies. On one side there is a sign painted Luckie Furniture Manufacturing Company and on the opposite side the Hotel Equipment Company, and we still have that truck and I have seen the signs on it lately, as they are the same thing. . . (Cross-examination.) I had but one license number for that truck, and that was in the name of the Hotel Equipment Company, which was taken out by Mr. Turner. On this occasion the kind of packages in that truck was case goods consisting of chiffoniers and dressing tables and they were going to the Sterchi Furniture Company. There might have been other parcels, furniture. I don't know as to the exact things, however, I didn't count them. They were going to the Sterchi Furniture

Manufacturing Company. All of them were going to the Sterchi Furniture Manufacturing Company. Mr. J. C. Ware was the president of the Hotel Equipment Company and he was also president of the Luckie Furniture Manufacturing Company. My recollection is, the treasurer of it was Mr. G. C. McWhorter, that is of the Hotel Equipment Company, and Mr. Thomas M. Turner was the secretary of the Luckie Furniture Manufacturing Company and was not the secretary-treasurer of that company, but the secretary. At the time of this accident Thomas M. Turner was vice-president, and myself as second vice-president. I was vice-president of the Luckie Furniture Manufacturing Company. I could not recollect all of the board of directors of the Hotel Equipment Company without refreshing my memory. Mr. Wells was one, Mr. Turner was one, I was one. I am not positive about Mr. McWhorter being one. Now the Luckie Furniture Manufacturing Company, Mr. Wells was one, I was one, and Mr. Turner was one. Subsequent to the accident I did not have occasion to go down to the police station, as the officer brought the negro by my office. I did not have occasion to go down to police headquarters after the negro was locked up, and I cannot say who went with Mr. Middlebrooks down there. I could not recollect all of those constituting the board of directors of the Hotel Equipment Company, without refreshing my memory, but Mr. Wells was one, I was one, Mr. Turner was one. I don't know who talked with the officers in the case. I did not at any time go down to the police station, and I did not secure the release of the negro, and I don't know anything about that."

The truck and the driver were both identified, without dispute, as being the truck and driver referred to in the testimony of Mr. Griffith. There was no other evidence touching the relation of the driver, under his employment, either to the Hotel Equipment Company or the Luckie Manufacturing Company. The accident happened at the intersection of Broad and Marietta streets in the city of Atlanta. The driver, John Williams, was at the time operating the vehicle, and had some articles in it, apparently for delivery either for the defendant Hotel Equipment Company or the Luckie Manufacturing Company.

We think that the evidence indisputably shows that the driver was at the time in the prosecution and within the scope of the

business *of one or the other of these companies,* they being his joint employers. "Where a servant, who is employed for the special purpose of operating an automobile for the master, is found operating it in the manner such machines are usually operated, the presumption naturally arises that he is running the machine in the master's service. If he is not, this fact is peculiarly within the knowledge of the master, and the burden is on him to overthrow this presumption by evidence which the law presumes is in his possession. Since the scope of the servant's employment is necessarily dependent on circumstances, a hard and fast rule cannot be laid down as to the scope of any particular employment; and it is ordinarily a question for the jury whether or not a particular act comes within the scope of a servant's employment." *Fielder* v. *Davison,* 139 *Ga.* 509 (6), 515 (77 S. E. 618).

But it is insisted that the evidence fails to show that John Williams, the driver of the truck, was acting within the scope of his employment about the business of the defendant Hotel Equipment Company. It is even urged that the evidence demanded a finding that he was upon a mission for his other employer. We cannot assent to either of these propositions. He was jointly employed by *both* to do the work of *either.* It follows that when he was doing the work of either he was doing the thing for which both and each had employed him. We find no basis in the testimony for the supposition that he was in the employment of one to the exclusion of the other for any particular time. The parties employed him jointly for all his time, and under that employment he was subject to the commands of both or either. The two companies were associated; their officers were practically the same. Mr. Griffith, an officer of the defendant, was also an officer of the Luckie Company, and had control of the truck and the driver for both companies. The automobile was owned by the defendant company and jointly maintained by both. If one of these companies had employed the man for a distinct portion of his time and another for the remainder, an entirely different question would be presented.

In Moore *v.* Southern Railway Co., 165 N. C. 439 (2) (81 S. E. 603, 51 L. R. A. (N. S.) 866), the Supreme Court of North Carolina ruled: "That the joint agent of two railroad companies at a particular station was performing a service for one of them

when he inflicted an injury upon a bystander does not relieve the other from liability for his acts." In the Tennessee case of Goodman v. Wilson, 129 Tenn. 464 (166 S. W. 752, 51 L. R. A. (N. S.) 1116), it was held: "Where a brother and sister jointly own an automobile, each. paying one-half of all expenses, including the wages of the chauffeur jointly employed, and with an equal right to the use of the machine, with the exception that the brother had a preference in being taken to and from work, the sister is liable for injuries sustained in a collision with a buggy while the chauffeur, alone in the machine, was racing with another machine on his way to take the brother home from work." See also Terry v. Burford, 131 Tenn. 451, 463 (175 S. W. 538, L. R. A. 1915F, 714) ; Griffin v. Russell, 144 Ga. 275 (87 S. E. 10, L. R. A. 1916F, 216, Ann. Cas. 1917D, 994); 1 LaBatt's Master & Servant, 51, § 15.

Our ruling is that, under the testimony of Mr. Griffith and the other facts referred to above, it appears, as a matter of law, that the employee in question was acting within the scope of his employment by the defendant when driving the truck at the command of either company, in connection with the ordinary business carried on by either, within the contemplation of the parties when entering the three-cornered arrangement. In this view it is immaterial that the trial judge, in giving the instruction set out above, failed -to tell the jury that the plaintiff, before being entitled to recover, should prove, among other things, that the person driving the automobile was in the prosecution and within the scope of the defendant's business at the time of the occurrence. The defendant was not harmed by the failure to submit its contention upon this point; there was no issue of fact upon which the contention could be predicated.

The conclusion just stated is controlling of other assignments as made in grounds 5, 10, 12, 13, 14, 15, 16, and 17, and also of the general grounds of the motion for a new trial, except in relation to negligence.

3. The court charged the jury as follows: "Now, I am going to use this expression 'ordinary care' a number of times in this charge, and I want you to understand exactly what that means, because it has been defined by the law. Ordinary care is that degree of care and caution which every prudent person would use under

the same or similar circumstances. Ordinary care in one place may not be ordinary care in another. So you are to determine what is ordinary care on the part of either party at the time, place, and circumstances of the occurrence. As a matter of illustration, suppose a man was walking on the public highway in the center of Atlanta,—as, for instance, at the corner of Whitehall and Alabama streets. He would have to exercise ordinary care not to be injured and not to injure anybody. If he was riding or driving he would be under the duty of exercising ordinary care not to injure people and not to be injured under the conditions of the time, place, and circumstances surrounding him. Now, what would be ordinary care at that place would not be ordinary care in a place different from that, as, for instance, five miles out in the country, where there was not great traffic or congestion. So a man driving an automobile or a carriage or a buggy, or anything of like character, if he was at a place where it was crowded, ordinary care would require greater care on his part than if he was out in a place where it was not crowded. So that in determining the question of whether this automobile was driven with ordinary care at the time and place and situation where this injury is alleged to have been inflicted, or whether this plaintiff in crossing the public highway or street at that time, whether under the circumstances he was guilty of negligence, or at least whether he observed ordinary care as to his own safety and as to avoiding the consequences of any wrong, if there was any wrong conduct by anybody else who happened to come in contact with him, would be for your determination." The effect of the assignment upon this charge is merely that it omitted to instruct the jury that a pedestrian should exercise greater care where traffic was congested, although it did instruct the jury to that effect with reference to one driving an automobile or truck, and that the charge thereby failed to state the contentions of the parties with equal fairness.

We can hardly see that the charge deals with the contentions at all. The judge was undertaking to explain to the jury the meaning of ordinary care as defined in the code. It was inaccurate for the court to say that *ordinary* care in one place would not be *ordinary* care in another. There are no degrees in ordinary care, although "more or less care is required under different circumstances to amount to ordinary care." The error in the explanation

was not substantial, and, furthermore, the assignment does not complain that the exposition was inaccurate. See *Central R. Co.* v. *Brantley,* 93 *Ga.* 259 (3) (20 S. E. 98); *White* v. *Knapp,* 31 *Ga. App.* 344 (6) (120 S. E. 796).

There is no reason here for the grant of a new trial.

The court instructed the jury that every motor-vehicle, while in use or operation upon the streets or highways, should at all times be provided and equipped with a signaling device. It is assigned that this charge was inapplicable for the reason that the plaintiff did not allege that the automobile was so equipped, but merely that no signal was given. It appears from an examination of the record that, immediately after giving the excerpt complained of, the court explicitly instructed the jury that the plaintiff's charge or allegation was that no signal by horn or otherwise was given.

Complaint is made also that the court charged: "Then there is a rule of the road requiring the passing to the right." It is insisted that this charge was inapplicable because there was no passing, but the plaintiff was crossing a public street at right angles when the automobile came down the street and struck him. The jury more probably construed the charge favorably to the defendant, if they undertook to apply it at all, because the evidence shows that the truck was on the right side of the street and was about to turn further to the right into another street at the place where the injury happened.

Both of the charges here excepted to were irrelevant and inapplicable, but the mere fact that the judge interjects into his charge some abstract principle of law inapplicable to the issues of the case does not always require a new trial. Where such instruction has been given, a reviewing court looks to the whole record to see if the complaining party in fact suffered injury. If so, a new trial will result; otherwise not. We do not think that the jury were misled into considering foreign issues, or that the defendant was otherwise prejudiced by the instructions complained of. *Kirkland* v. *Brewton,* 32 *Ga. App.* 128 (2) (122 S. E. 814).

There is no merit in the assignment that the court erred in charging the jury: "You consider . . whether a witness . . is related or not related to the parties in the case; and this word 'related' would apply to business relations as well as relationship in blood," upon the ground that the same *directed* the jury to con-

sider the question of relationship, instead of informing them that they might do so. *Jordan* v. *State,* 130 *Ga.* 406 (3) (60 S. E. 1063). This, however, would seem to be one of the assignments controlled by our ruling in the second division of this opinion, and even if ordinarily such instruction would be error, it was harmless to the defendant in this case.

Nor is there any merit in the exception that the court failed to instruct the jury upon the subject of negligence, and failed to define that term. The general charge discloses that the jury were fully instructed in general terms upon this subject. It is not error to fail to define negligence in the absence of a proper request. *Harvey* v. *Bartow County,* 31 *Ga. App.* 84 (2 *b*) (119 S. E. 538).

4. There was sufficient evidence to establish the defendant's negligence, the credibility of the witnesses being a matter for the jury; and it cannot be said that a finding was demanded that the plaintiff was equally negligent or could have avoided the consequences of the defendant's negligence by ordinary care. Questions as to negligence and diligence and proximate cause are ordinarily to be solved by the jury. A finding for the plaintiff was fully warranted. *Louisville & Nashville R. Co.* v. *Stafford,* 146 *Ga.* 206 (91 S. E. 29); *Harris* v. *Southern Ry. Co.,* 129 *Ga.* 388 (2) (58 S. E. 873); *Seaboard Air-Line Ry.* v. *Hood,* 127 *Ga.* 206 (56 S. E. 303); *Howard* v. *Savannah Electric Co.,* 140 *Ga.* 482 (79 S. E. 112); *Georgia R. Co.* v. *Wallis;* 29 *Ga. App.* 706 (116 S. E. 883); *Southern Ry. Co.* v. *Pair,* 32 *Ga. App.* 378 (1) (123 S. E. 142).

It is insisted, though, that the verdict is excessive. In this case, as in *Georgia Southern R. Co.* v. *Neel,* 68 *Ga.* 609 (1), 611, "the plaintiff, in his declaration, does not allege the value of his services, but puts his case on the damages which he sustained by reason of the injury to his body, his pain and suffering, his confinement to his bed, and the actual outlay of expense in and about his" injury. The plaintiff does not in express terms pray for any damages for his lost earning capacity. He does ask for general damages. *Georgia Ry. &c. Co.* v. *Howell,* 28 *Ga. App.* 798 (3), 802 (113 S. E. 101). The evidence shows that he was absent from his employment only from September 17, 1921, to December 28th next following, that he is now receiving the same salary that was paid to him before the injury, and is engaged in the same work.

He offered no evidence bearing directly upon the loss of earning capacity. He was thirty-nine years of age at the time of the injury. His left leg was broken near the knee. He had two operations, and carried his limb in a cast for eight weeks. The trial occurred September 18, 1923. He testified that he suffered severe pain at the time of the injury, and that he still suffers to some extent; and that he has in part lost the use of his leg. The testimony of his physician was to the effect that he had very good results considering the nature and extent of the injury, but the jury were authorized to find that his injury will be permanent and that his pain and suffering will continue indefinitely, though perhaps it will not be intense. It was legitimate for them to consider also as a part of his pain and suffering that he will have to go through life with the impediment and inconvenience of a lame member. They could have found, too, that this condition would restrict his activities and pursuits, even if not his earning capacity, both in business and in pleasure. He alleged and proved expenses incurred on account of the injury to the extent at least of $550.

Assuming the action to be one for damage only for the injury and the pain and suffering incident thereto, past and future, and excluding all idea of loss of earning capacity, we cannot hold that the amount of the verdict, less the expense, is so great as to show bias, prejudice, or mistake on the part of the jury. *Central of Georgia Ry. Co.* v. *Clark,* 15 *Ga. App.* 16 (82 S. E. 600); *While* v. *Knapp,* supra; *Georgia Ry. &c. Co.* v. *Howell,* supra; *Atlantic & Birmingham R. Co.* v. *Douglas,* 119 *Ga.* 658 (4) (46 S. E. 867); *Holland* v. *Williams,* 3 *Ga. App.* 636 (60 S. E. 331); *Realty Bond &c. Co.* v. *Harley,* 19 *Ga. App.* 186 (2) (91 S. E. 254); *Seaboard Air-Line Ry.* v. *Miller,* 5 *Ga. App.* 402 (63 S. E. 299); *Dixie Mfg. Co.* v. *Ricks,* 30 *Ga. App.* 433 (5) (118 S. E. 452); *Betts Co.* v. *Hancock,* 139 *Ga.* 198 (77 S. E. 77); Civil Code (1910), § 4504.

No prejudicial error appears. The court did not err in overruling the motion for new trial.

*Judgment affirmed. Stephens, J., concurs. Jenkins, P. J., disqualified.*