Argued January 13; affirmed March 1, 1932

## WILLIAMS *v.* DALE ET AL.

(8 P. (2d) 578)

*H. E. Slattery,* of Eugene, for appellant.

*Charles A. Hardy* and *David B. Evans,* both of Eugene (Immel & Evans, of Eugene, on the brief), for respondents.

108

BEAN, C. J. Plaintiff by his reply admits the award made by the Industrial Accident Commission. We deem it immaterial whether the alleged improper treatment and its result were reported to the commission or not.

The principal question for determination in this case is whether plaintiff is barred from maintaining an action against defendants for the aggravation of an injury received while in the employ of a logging contractor, both plaintiff and his employer being subject to the provisions of the Workmen's Compensation Act, and having received compensation for temporary total disability, as well as a final award, made over a year following his accident and based upon the actual condition of his leg at the time of making the award.

This case is practically on all fours with the case of *McDonough v. National Hospital Association,* 134 Or. 451, (294 P. 351). The learned counsel for plaintiff suggests that there is a distinction between this case and the McDonough case, in view of the fact that in the McDonough case it was admitted and affirmatively stated that there was received compensation for all injuries naturally resulting from the original injury and that that is denied in this case. As we view the question it is not a material denial. The Workmen's Compensation Law prescribes what the effect of such an award is, and what the effect of the receipt of the compensation award under the statute is. It is one of the main objects of the Workmen's Compensation Law that suitable, speedy relief may be rendered to an employee who, together with his employer, comes within

its provisions, and although the compensation may not, in all cases, be as great as would be recovered in cases of negligence, nevertheless the amounts provided for, when awarded, take the place of and are in full settlement for such injuries. In order that the relief may be timely in such cases and to clothe the commission with statutory authority to make provisions therefor, section 49-1814, Oregon Code 1930, provides as follows:

''Every workman subject to this act while employed by an employer subject to this act who while so employed sustains personal injury by accident arising out of and in the course of his employment and resulting in his disability * * * shall be entitled to receive from the industrial accident fund thereby created the sum or sums hereinafter specified and the right to receive such sum or sums shall be in lieu of all claims against his employer on account of such injury or death, except as hereinafter specifically provided; provided, however, that if the injury to a workman occurring away from the plant of his employer is due to the negligence or wrong of another not in the same employ, the injured workman * * * shall elect whether to take under this act or seek a remedy against such other, such election to be in advance of any suit, and if he elects to take under this act the cause of action against such third person shall be assigned to the state industrial accident commission for the benefit of the accident fund. If the other choice is made, the accident fund shall contribute only the deficiency, if any, between the amount of recovery against such third person actually collected and the compensation provided or estimated by this act for such case. * * *''

It is plain from the provisions of the Workmen's Compensation Act that any workman, while he is subject to the act and in the service of an employer who is bound to contribute to the industrial accident fund, who shall sustain a personal injury by accident arising out of and in the course of his employment, shall re-

ceive compensation according to the schedule provided in section 49-1827. And it is plain from the provisions of section 49-1829 that in addition to the award that may be made under the act, such an injured workman is entitled to first aid, together with transportation, medical and surgical attendance and hospital accommodations, the expenses of which are not to be deducted from the compensation allowed by the award. Therefore the treatment by the defendants, as alleged in plaintiff's complaint, which was authorized and sanctioned by the Industrial Accident Commission, under authority of the Workmen's Compensation Law, was an integral part of the award made by the commission to plaintiff on account of his injuries, and the amount paid pursuant to such award is full compensation for such injuries, including the aggravation complained of in the treatment by the physicians. The arrangement for medical treatment and hospitalization of such an employee is a mutual one made by the Industrial Accident Commission, who authorizes the contract under the statute, the employee, who contributes a small amount of his wages, the employer and the physicians, to which compact the employee consents when he comes within the provisions of the act. In such cases where a contract is made for the care and medical attention of the injured workmen the statute provides that if, under such contract, the injured workmen are not properly treated, the Industrial Accident Commission may abrogate the contract: Section 49-1504, Oregon Code 1930.

Section 49-1827, Oregon Code 1930, provides in part:

"(i) If aggravation, diminution or termination of disability takes place or be discovered after the rate of compensation shall have been established or com-

pensation terminated in any case, the commission may, upon the application of the beneficiary, or upon its own motion, readjust for future application the rate of compensation in accordance with the rules in this section provided, or, in a proper case, terminate the payments.''

The aggravated injury caused by the medical or surgical treatment of the injured workman, whether such treatment was skillful or otherwise, became a part of the original injury and was taken into consideration in the arbitration of the Industrial Accident Commission, according to the provisions of the statute, in making the final award, and when plaintiff accepted the amount of the award he accepted compensation for the whole injury, including the injury caused by the malpractice of defendants, alleged in the complaint. In other words, the Industrial Accident Commission awarded compensation for the injuries of plaintiff as they existed at the time of the final award: Section 49-1827, sub-sec. (i), Oregon Code 1930; 8 R. C. L. 449; *Chebot v. State Industrial Acci. Comm.,* 106 Or. 660 (212 P. 792); *Ross v. Erickson Construction Co.,* 89 Wash. 634 (155 P. 153, L. R. A. 1916F, 319).

█ In accordance with the general rule, when a plaintiff has accepted satisfaction in full for an injury done him from whatever source it may come, he is so far affected in equity and good conscience that the law will not permit him to recover again for the same damages, as the law regards an injury resulting from the mistakes of a physician in treating an injury as a part of the immediate and direct damages which naturally flow from the original injury: *McDonough v. National Hospital Association,* supra, page 455, and

cases there cited; *Reed v. City of Detroit,* 108 Mich. 224 (65 N. W. 967); *Stover v. Inhabitants of Bluehill,* 51 Me. 439.

The Oregon Workmen's Compensation Act was enacted not only for the benefit of the employer and employee but for the purpose of minimizing litigation and lessening the burden on the taxpayers resulting therefrom: Section 49-1801, Oregon Code 1930.

It is contended by plaintiff that the Workmen's Compensation Act prevents the plaintiff from availing himself of his common-law remedy. The statute is not in abrogation of the common-law, but follows in the wake thereof. It was almost the universal rule under the common law that an employer was not only liable for an original injury received during employment but also for any aggravation thereof by the act or conduct of a physician or surgeon: *Hunt v. Boston Terminal Co.,* 212 Mass. 99 (98 N. E. 786, 48 L. R. A. (N. S.) 116, Note, p. 117). And a settlement with the employer or the original tort feasor released the attending physician for an aggravation of the original injury through malpractice: *McDonough v. National Hospital Association,* supra; *Stires v. Sherwood,* 75 Or. 108 (145 P. 645); *Berkley v. Wilson,* 87 Md. 219 (39 Atl. 502); *Martin v. Cunningham,* 93 Wash. 517 (161 P. 355, L. R. A. 1918A, 225); *Retelle v. Sullivan,* 191 Wis. 576 (211 N. W. 756, 50 A. L. R. 1106); *Polucha v. Landes,* 60 N. D. 159 (233 N. W. 264).

The facts set forth in defendants' answer, which are admitted by the reply, constitute a complete defense to plaintiff's cause of action. Therefore the judgment on the pleadings, as for want of a reply to the answer, should be sustained: § 1-616, Oregon Code 1930; *McDonough v. National Hospital Association,* supra.

In view of the fact that the question involved herein is practically covered by the opinion of Mr. Justice RAND in *McDonough v. National Hosital Ass'n,* supra, we deem an extended discussion unnecessary.

The judgment of the circuit court is affirmed.

BROWN and BELT, JJ., concur.

ROSSMAN, J., dissents.

———

ROSSMAN, J. The pleadings show that September 4, 1929, the plaintiff was injured; that he employed the defendants as his physicians; that September 13, 1929, he applied to the Industrial Accident Commission for compensation "on account of the injuries which he had sustained September 4, 1929"; that he did not report to the Commission the injuries inflicted upon him by the defendants' alleged malpractice; that those injuries were never disclosed to the Commission by anyone; and that the Commission made two awards: (a) one based upon temporary total disability, and (b) its final one October 20, 1930. Since the reply denies the allegations of the answer which allege that the final award included compensation for the injury inflicted by the defendant, and, since the same pleading expressly alleges that the plaintiff has received no compensation whatever for those injuries, I feel justified in adding to the aforementioned group of facts the additional one that the plaintiff has received no compensation whatever for the injuries done him by the physicians. The motion for judgment upon the pleadings must be deemed to admit the truth of all the facts just reviewed. Thus, that motion admits that (1) September 4, 1929, the plaintiff sustained an industrial injury; (2) at some time following that injury the defendants, through malpractice, injured him; (3) in

this action the plaintiff is seeking to render the defendants liable to him for the latter injury only; (4) the plaintiff applied to the Commission for compensation for only the injury inflicted September 4, 1929; (5) when the amount of his compensation was determined, the Commission was ignorant of the injury which the defendant had imposed; (6) the plaintiff received compensation for the injury of September 4, 1929, only; and (7) he has been paid nothing for the injury resulting from the alleged malpractice.

The majority has construed the Workmen's Compensation Act so that the relief provided by the fund is the sole and exclusive remedy available to an injured workman whose injury has been aggravated by a malpractitioner, even though he neither asked for nor received any compensation for the wrong done by the latter. The majority holds that even under such circumstances he cannot sue the physician. His cause of action, they argue, has been transferred to the Commission. And, since it is most unlikely that the Commission, should it ever undertake to enforce the assigned claim, would recover anything, the holding of the majority substitutes as the beneficiary of the act the negligent physician in lieu of the unfortunate injured workman.

How can the commission use money contributed by the employer and the employee to pay the physician's debt? It cannot replenish the fund by suing the physician because it is not the owner of the claim against the physician. Tort claims are nonassignable. Moreover, the victim of the malpractice, far from having assigned his claim, insists upon suing the physician.

A workman who receives a slight scratch upon the hand while engaged in his work which, due to the negligence of a physician, becomes infected and eventually

results in the amputation of his arm, is afforded no choice by the prevailing decision. Should he apply to the Commission for compensation for the injury done by the scratch, the majority decision would resolve his application into a waiver of his claim against the physician. Thus, he could not demand relief, to which he was entitled and for which he had paid, without surrendering his valuable right against the physician. In fact, the majority decision warrants the conclusion that he could not sue the physician under any circumstances.

It is evident that the plaintiff sustained two injuries at the hands of two sets of individuals: (1) the first injury occurred when the plaintiff in the course of his employment sustained an industrial injury; and (2) the second injury was due to the alleged malpractice of these defendants. The plaintiff concedes that the Workmen's Compensation Commission has compensated him in full for the first injury, but denies expressly that he has received any compensation or an award of damages of any nature for the second injury. A marked distinction, therefore, exists between this case and *McDonough v. National Hospital Assn.*, 134 Or. 451 (294 P. 351), which is the authority the majority claims governs this case. In that case the pleadings demanded the conclusion that the plaintiff had received from the industrial accident fund compensation for both injuries. The majority now proposes to hold that the denial by the injured man of the allegations of the answer that he has been paid in full is ineffective, and also proposes to disregard his express allegation, "the plaintiff has accepted nothing whatever from the State Industrial Accident Commission of Oregon on account of the injuries received by him at the hands of the defendants."

It is evident that the employer and the physicians were not joint tort feasors; in fact, the plaintiff's right to recover from the fund compensation for the first injury was not dependent upon his ability to prove that it was tortiously inflicted. His right to compensation was established when it appeared that he was somehow injured in an accident which arose "out of and in the course of his employment": Section 49-1814, Oregon Code 1930. The facts, if such were true, that his employer was not negligent, or that he himself was guilty of a lack of due care, or that his employer's negligence was not the proximate cause of the injury were immaterial circumstances. Hence, the law of torts had no application to his efforts to gain compensation. But recovery from the physicians for the second injury is entirely dependent upon the plaintiff's ability to prove negligence. We reiterate that the employer and the defendants were not joint tort feasors.

For the first injury the plaintiff, in the absence of our Workmen's Compensation Act, had a right of action against his employer provided he could prove negligence. He could even now assert that cause of action but for the fact that the Workmen's Compensation Act in express language deprives him of it, and as a substitute grants him relief from the fund. The relief payable out of the fund is measurably less than in an action for damages. For this difference the injured workman is compensated to some extent by being relieved of the necessity of proving negligence and proximate cause. For the second injury the common law recognized his right to maintain an action against the physician. Although the common law permitted an injured employee, whose period of disability had been lengthened out by the malpractice of his physician, to tack on to the claim for damages, which he as-

serted against his employer, his claim against the physician (because the latter was a proximate result of the employer's negligence), yet it was not necessary for him to do so. The law recognized his right to keep the two claims separate, and sue the employer for the consequences of his negligence and the physician for the injury inflicted by his malpractice: Pollock on Torts (13th Ed.), pp. 485-487.

Clearly, the injured employee still possesses the right to sue the physician after taking compensation for only the injury inflicted by his employer, unless the Workmen's Compensation Act deprives him of this cause of action. And it seems like a fair demand to insist that those who propose to deprive the injured workman of his claim against the physician should be able to point to language of the act which clearly and unambiguously abolishes this remedy. Nothing pointed out by the majority in this case, nor in *McDonough v. National Hosp. Assn.*, 134 Or. 451 (294 P. 351), singles out any part of the act whatever which deprives the injured employee of his right to sue the physician upon his willingness to take compensation from the Commission for the injury inflicted by his employer only. Nowhere does our act declare that recourse to the fund shall be the exclusive remedy available to the injured employee, and no language of the act is susceptible of the construction that all causes of action against the physician are abolished. The authorities cited in *McDonough v. National Hosp. Assn.* and in the recent case of *Polucha v. Landes,* 60 N. D. 159 (233 N. W. 264), exert themselves with evident labor to find words in the respective acts capable of supporting the conclusion that the remedies afforded by the act are exclusive. A reading of the excerpts from the various acts quoted in those decisions readily discloses that

those courts were favored with occasional passages in their acts which more or less required conclusions that the recourse against the fund was the only remedy available. Yet even those decisions, based as they were upon acts somewhat susceptible to such construction, have been criticized by Prof. Paul A. Leidy in 29 Mich. Law Rev. 568, as ill-advised. He clearly points out that the language upon which the decisions relied did not demand such interpretations. But our act, as will be seen from the extended excerpts set forth in *McDonough v. National Hosp. Assn.*, supra, contains no language capable of a construction that recourse against the fund shall be the exclusive remedy, nor that all actions against the physician are abolished. It is my opinion that our act was never intended to deprive an injured workman of his right to proceed against his physician upon acceptance from the Commission of compensation for only the injury done directly by the employer. In fact, even the cases which have arrived at conclusions similar to that announced in *McDonough v. National Hosp. Assn.*, supra, disavow any intention to so hold. I quote from *Polucha v. Landes*, supra:

"Of course, where the compensation paid is shown not to include any damages for the malpractice, a different question is presented. *Viita v. Fleming et al.,* 132 Minn. 128 (155 N. W. 1077, L. R. A. 1916D, 644, Ann. Cas. 1917E, 678); *White v. Matthews,* 221 App. Div. 551 (224 N. Y. S. 559). See, also, the very recent case of *Pederson v. Eppard, supra,* [181 Minn. 47, 231 N. W. 393], where this distinction is pointed out by the Minnesota court."

Concluding this portion of these dissenting remarks, I shall merely offer the observation that authority can readily be found for the statement that a settlement between the injured man and the employer,

whether made under the compensation act or outside of it, does not preclude recovery against the negligent physician, in the absence of a showing that the settlement included compensation for the wrong done by the malpractitioner. Double recovery is the evil to be avoided. The avoidance of that evil does not demand the creation of an arbitrary rule to the effect that the remedy prescribed by the act precludes all action against the physician.

The following language taken from *Hotel Equipment Co. v. Liddell*, 32 Ga. App. 590 (124 S. E. 92), well expresses the construction which I believe should be placed on our act:

"Section 12 does not by express language take away the right of an employee to sue the wrongdoer. Its terms can only mean that he and his employer are subject to the act and that he shall have no other remedy against his employer. Third persons are not concerned. An outsider does not share the burdens of the act imposed upon the employer, and he is entitled to none of its benefits. It was never the purpose of this statute to place exclusive liability upon the master for injuries to his employees arising out of and in the course of the employment, and thus to grant immunity and license to others who were responsible for the injuries."

A careful study of the decisions which hold that a victim of the alleged malpractice cannot sue the physision discloses that they do not base their conclusions as much upon the provisions of the Workmen's Compensation Act as upon the principle of the common law that an injury inflicted by the physician may be tacked on to the injury inflicted by the employer as a proximate result of the employer's negligence. It will at once be noticed, however, that in obtaining re-

lief from the fund the injured workman is not concerned with the proximate result rule; he need establish only his status as an employee and his charge that the injury arose out of and in the course of his employment. I am aware of no analogy between a proceeding conducted under the Workmen's Compensation Act to obtain compensation and an action based upon charges of negligence which prays for the recovery of damages. Workmen's Compensation Acts are complete within themselves and need no assistance from the law of negligence which they were intended to supplant. These acts define definitely what injuries are compensative. The phrase "an injury arising out of and in the course of his employment" is the dominant language of the act. It is the magnetic needle which points out the beneficiary of this legislation. Courts have held that an injury inflicted by a physician's malpractice cannot be said to have arisen out of and in the course of the workmen's employment. I quote from *Ruth v. Witherspoon-Englar Co.*, 98 Kan. 179 (157 P. 403, L. R. A. 1916E, 1201):

"So much of an employee's incapacity as is the direct result of unskilled medical treatment does not arise 'out of and in the course of his employment' within the meaning of that phrase as used in the statute. Laws 1911, chap. 218, § 1. For that part of his injury his remedy is against the persons answerable therefor under the general law of negligence, whether or not his employer be of the number."

Since the compensation acts clearly define what injuries are compensative and substitute for the proximate result rule the maxim "an injury which arose out of and in the course of the employment," that rule has no proper place in a proceeding conducted under the act. The Workmen's Compensation Act

should not be fettered with the numerous rules which constitute the law of negligence, especially so when it was adopted because of impatience with those principles. But if we cannot part company with the proximate result rule when administering this new law, which bids us do so, and if we feel that we must infuse into the Workmen's Compensation Act the rules prescribed by the legislature and for the sake of symmetry carry them to the same extent that they were applied in actions of negligence, then we ought, at least, look back and see whether our application is producing justice. I quote from Judge Cardozo's volume, ''The Nature of the Judicial Process,'' p. 66:

''The rule that misses its aim cannot permanently justify its existence.   *   *   *   There is an old legend that on one occasion God prayed, and his prayer was, 'Be it my will that my justice be ruled by my mercy.' That is a prayer which we all need to utter at times when the demon of formalism tempts the intellect with the lure of scientific order.   *   *   *   I mean that when they are called upon to say how far existing rules are to be extended or restricted, they must let the welfare of society fix the path, its direction and its distance.''

Does it not seem strange to deny to the injured workman whom it was intended should be the principal beneficiary of the act even the limited control, through a claim for damages, over the physician who is administering to him in his helpless condition, and in whose selection he had no voice whatever? The compensation paid under the provisions of the act is admittedly less than that deserved, and now, by holding that the act permits the malpractitioner to escape, the workmen whose injuries have been multiplied is left in a worse condition than before.

A study of section 49-1836, subd. (c), Oregon Code 1930, that being the section of our laws which the majority holds denies to the injured workman a right to sue a malpractitioner, readily discloses how valuable rights of an injured workman can be frittered away. That section of our act provides: "Any application for increased compensation for aggravation must be filed within one year from the date of the first award of compensation to the claimant." It is altogether possible that "within one year from the date of the first award of compensation" the act of malpractice had not yet occurred, or that its ill effects had not yet revealed themselves. Hence, if this section has application the injured workman can recover compensation for malpractice only in the event he receives medical attention for no longer than one year. The obvious injustice of such a situation is a powerful reason for believing that the legislature never intended that this section of our laws should receive the interpretation which the majority assigns to it.

There is still another reason why the plaintiff should be permitted to proceed against these defendants. The sum which the plaintiff received from the Accident Commission is in reality insurance money only. In *Evanoff v. State Industrial Acc. Comm.*, 78 Or. 503 (154 P. 106), wherein this court upheld the validity of the act, it spoke thus of the nature of the compensation which the act provides: "The state proposes to employers and employees an accident and life insurance scheme." The Federal Supreme Court in *New York Central Railroad Company v. White*, 243 U. S. 188 (61 L. Ed. 667, 37 S. Ct. 247, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629), wherein it upheld the validity of the New York act, repeatedly employed the words "compulsory compensation" and "insurance" in de-

scribing the results accomplished by the act. From *Stertz v. Industrial Insurance Comm.*, 91 Wash. 588 (158 P. 256, Ann. Cas. 1918B, 354), I quote:

"To resume, ours is not an employer's liability act. It is not even an ordinary compensation act. It is an industrial insurance statute. Its administrative body is entitled the industrial insurance commission. All the features of an insurance act are present. Not only are all the remedies between master and servant abolished, and, in the words of the statute, all phases of them withdrawn from private controversy, but the employee is no longer to look to the master even for the scheduled and mandatory compensation. He must look only to a fund."

See also 28 R. C. L., Workmen's Compensation Acts, p. 714, § 3. From *Hotel Equipment Co. v. Liddell,* 32 Ga. App. 590 (124 S. E. 92), I quote:

"But, departing now from the assumption that compensation under the workmen's compensation law is in the nature of damages awarded for injury, we are of the opinion that it is in truth like the benefits under an insurance policy. *City of Austin v. Johnson* (Texas Civ. App.), 204 S. W. 1181; *Ohio Traction Co. v. Washington,* 6 Ohio App. 273; 1 Honnold on Workmen's Compensation, 5, § 2; 1 Schneider's Workmen's Compensation, 1, § 1, and citations. Being of the nature indicated, its receipt by an injured employee can afford no ground upon which a third person who negligently inflicted the injury should escape liability, either wholly or in part. *Western & Atlantic Railroad v. Meigs,* 74 Ga. 857 (5); *Nashville, Etc, Ry. Co. v. Miller,* 120 Ga. 453 (3) (47 S. E. 959, 67 L. R. A. 87, 1 Ann. Cas. 210); *City of Rome v. Rhodes,* 134 Ga. 650 (68 S. E. 330)."

When one bears in mind the facts that the Industrial Accident Fund of this state is composed (apart from the original contribution made by the state) of

(1) contributions made by the employees in the form of premiums to purchase protection, and (2) contributions made by the employers to secure protection against personal injury actions, and that, although the fund is in the possession of the state, yet the latter disclaims all ownership of it (1929 Session Laws, p. 163), strong circumstances are revealed which demand the holding that the compensation provided is insurance money and not damages. Another circumstance is the fact that when the amount of the compensation was determined, pain and suffering were ignored. The compensation is intended to take the place of the lost earning power; in fact, the compensation is almost always less than the actual damages suffered. Again, compliance with the act in this state is optional upon the part of both employer and employee. It seems fair to conclude that when both employer and employee have elected to avail themselves of the benefits of the act they have thereby, in effect, provided themselves with state industrial insurance. Hence, the sum which was paid to the plaintiff was nothing more than insurance money. He cannot sue his employer because the act prohibits him from so doing; but neither the language of the act nor any principle of law reviewed by the majority in this case, nor in *McDonough v. National Hospital Assn.*, supra, prevents him from suing the physicians.

Finally, what process of reasoning can sustain the validity of the act when the interpretation of the majority has been placed upon it? Is it not clear that when the act is thus construed it violates those provisions of constitutional law which prohibit class legislation? To injured workmen are denied the remedy of malpractice actions, whereas to all others this remedy remains available. Between the workman and the

physician the relationship of employer and employee does not exist, and, hence, the reasoning which has sustained the validity of the acts when applied in actions between the employer and employee is not available here. Possibly, it could be argued that since the Oregon act is an optional one it can be said that the employee has contracted away his right to sue the physician; but it must be evident that the optional feature, so far as the workman is concerned, is theoretical and not real. His exercise of the so-called option is coerced by his need of employment. It must be true that in most instances when the act of malpractice is committed the victim is no longer a workman or an employee; he is like the other individual lying upon the adjacent cot—a patient and nothing more. Moreover, before instituting his action he has released his employer from all liability by accepting compensation from the commission for the industrial injury. Thus, here also the last vestige of the employee status has been severed. It seems evident that when the act is construed to deprive such an individual of his right to maintain an action of malpractice, while this right is not taken away from anyone else, the validity of the act cannot survive an attack on the ground that it is class legislation.

For the above reasons, I dissent.