**Clara RUDICK, Appellant,**

v.

**PIONEER MEMORIAL HOSPITAL, Denison M. Thomas, M.D., and Charles E. Donley, M.D., Appellees.**

**No. 17229.**

United States Court of Appeals Ninth Circuit.

Oct. 13, 1961.

Rehearing Denied Dec. 18, 1961.

Ryan & Ryan, Fulop & Gross, Portland, Or., for appellant.

Hugh L. Biggs, George H. Fraser and Cleveland C. Cory, William F. Thomas, William H. Morrison, Portland, Or., for appellees.

Before HAMLIN, MERRILL and KOELSCH, Circuit Judges.

MERRILL, Circuit Judge.

By this diversity action appellant seeks to recover damages for negligent medical care and treatment received by her following an automobile accident. The question presented is whether her right to such recovery has been barred by virtue of her having released the driver of the automobile.

In the district court the case was assigned to Judge John F. Kilkenny. In the pretrial order the facts are stated as follows:

"On or about the 25th day of May, 1957, in the vicinity of Mitchell, Oregon, plaintiff, Clara Rudick, a single woman, was involved in an automobile accident while riding as a passenger in an automobile being driven and operated by one James W. Locke. As a proximate result of said automobile accident plaintiff received certain injuries to her person, and as a proximate result of said injuries plaintiff received hospitalization, care and treatment from the defendant Pioneer Memorial Hospital (Prineville Memorial Hospital) and medical care and treatment from the defendants Denison M. Thomas, M.D., and Charles E. Donley, M.D. Such injuries as the plaintiff sustained to her person and the medical care and treatment and hospitalization afforded to the plaintiff by defendants all occurred within the State of Oregon.

"Plaintiff returned to her home where, on or about June 27, 1957, she consulted a physician and learned that further medical care and treatment would be necessary. Plaintiff was hospitalized and shortly thereafter underwent surgery in an attempt to correct the condition then known to exist."

On November 27, 1957, plaintiff signed a document entitled "Release of all Claims," which provided in part as follows:

"For and in Consideration of the payment to the undersigned, Clara Rudick, of the sum of Forty-two Hundred Fifty and 00/100 ($4,250.-00) Dollars, the receipt whereof is hereby acknowledged, the undersigned does hereby release, acquit and forever discharge James W. Locke and all other persons, firms and corporations in any way interested or concerned, of and from any and all claims, demands, damages, actions and causes of actions of every kind and nature whatsoever, past, present and future, anticipated and unanticipated, whether the same may be now known or suspected to exist or may be hereafter discovered, for, by reason or on account of in-

juries to the person and property of the undersigned, and the consequences flowing therefrom, and any and all damages, general or special, sustained or to be hereafter sustained by the undersigned, as the result of that certain accident, casualty or event which occurred on or about the 25th day of May, 1957, at or near Mitchell, Oregon, wherein Clara Rudick sustained Per. Inj.

\*    \*    \*    \*    \*    \*

"It is understood and agreed that this is a full and final compromise, release and settlement of all such claims, demands, damages, actions and causes of action, known and unknown, [illegible] and unsuspected, and, as a further consideration and inducement for this compromise settlement on provisions of Section 1542 of the Civil Code of the State of California are hereby expressly waived by the undersigned, and the undersigned does hereby expressly agree that this release shall extend and apply to all unknown, unsuspected and unanticipated injuries and damages resulting from said accident, casualty or event, as well as to those now disclosed."

The issue as to the scope and effect of the release document was segregated for trial and determination of this issue was referred to Judge Gus J. Solomon. Upon consideration of the legal problem presented, Judge Solomon ordered a hearing upon the question of intention of the parties in the execution of the release. That hearing was had before Judge Kilkenny, the parties stipulating that Judge Solomon might use a transcript of the testimony taken at the hearing.

The only witnesses testifying with respect to intent were appellant and her brother. Judge Solomon concluded that appellant had "failed to sustain the burden imposed upon her to prove an intention different from that clearly expressed in the document itself." Judgment was rendered in favor of appellees, from which this appeal is taken.

Upon this appeal the parties differ in their construction of Oregon law as bearing upon the legal effect of the release. In this respect, we agree with the views and reasons of Judge Solomon as expressed in his opinion of December 10, 1959, denying defendants' motion for dismissal and ordering a hearing upon the question of intent. He stated:

"In Stires v. Sherwood, 1915, 75 Or. 108, 145 Pac. 645, the Oregon court held that a release in favor of one of several joint tort-feasors operated to discharge all. This rule was not based upon the supposed intention of the releasing party but upon the rationale 'that the plaintiff has but one cause of action and can reap but one satisfaction.' 75 Or. at [page] 112 [145 P. at page 646].

"In McDonough v. National Hospital Ass'n, 1930, 134 Or. 451, 294 Pac. 351, and in Williams v. Dale, 1932, 139 Or. 105, 8 P.2d 578 [82 A.L.R. 922], the court recognized the rule that an injured party's cause of action against an original tort-feasor encompassed damage resulting from the negligent examination and treatment of the original injuries. The court therefore held that a release in favor of the original tort-feasor operated to discharge not only joint tort-feasors but also aggravating tort-feasors.

"However, in Hicklin v. Anders, 1954, 201 Or. 128, 253 P.2d 897, 269 P.2d 521, Justice Hall Lusk, speaking for the Court in a well reasoned and exhaustive opinion, repudiated the rationale of these cases as a 'surviving relic of the Cokian period of metaphysics,' and expressly adopted the rule that 'releases must be given effect according to the intention of the parties.' 201 Or. at [page] 135 [253 Pa.2d at page 899].

"Although the document involved in this case purports to be a general release, we do not consider that fact to be controlling on the question of the intention of the parties.

"In Keadle v. Padden, 143 Or. 350, 20 P.2d 403, 22 P.2d 892, an employee of an air transport company who had sustained injuries in an examination conducted by a company doctor, brought an action for malpractice against the doctor. The plaintiff was permitted to introduce parol evidence to establish that a release executed to his employer purporting to 'extinguish all liability of whatever kind arising out of said injuries' was intended as only a partial release.

"In our view Keadle v. Padden, supra, places Oregon among those jurisdictions which follow the well established rule that a litigant who was not a party to a written agreement upon which he seeks to rely, may not prevent the introduction of parol evidence to establish the intention of the parties to the agreement."

The issue presented by this appeal, as we view it, is thus whether the court was in error in concluding for the reasons given that appellant had failed to meet the burden of establishing an intent different from that "clearly expressed" in the release document.

Appellant testified that her brother had carried on negotiations with Locke's insurance carrier. She received an offer of settlement in the sum of $4,250 and telephoned her brother, who advised her to accept it:

"He suggested I go ahead and sign it."

With reference to intent, her testimony was as follows:

"Q. When you signed this paper that has been handed to you, which is the release, what was your intention with reference to your rights in signing that? A. I was releasing James Locke from the accident.

"Q. Did you consider at that time that you might be releasing anyone else? A. No, I did not.

"Q. I don't understand your answer. Did you intend to release somebody else, or did you not? A. No. I intended to release James Locke.

"Q. And only James Locke? A. That's right."

Appellant's brother testified that his sister had entrusted settlement of her claim to him, that he understood Locke's insurance coverage to be limited to $5,000 and his interest was in securing as much of that amount as he could. He testified:

"Q. What I have reference to, Mr. Rudick, is, had you thought about a malpractice suit at this time? A. Had I thought about it?

"Q. Yes. A. Yes.

"Q. Had you discussed that with Clara? A. Yes.

"Q. What was your intention with reference, or your idea of the effect of this settlement with reference to any malpractice suit? A. None at all. It was to settle with James Locke in the accident that he had had.

"Q. With reference to a malpractice suit, what was your feeling as to the effect of your negotiation with the insurance company? A. I didn't think it had any association with it at all.

"Q. That was your intention? A. Yes, sir.

"Q. Did you ever see the release that Clara signed until the other day in my office? A. No, I did not."

The judge noted:

"Plaintiff did not testify, nor was there any evidence, that she was incapacitated or prevented from reading or understanding the document or that she did not read or understand it.

\*  \*  \*  \*  \*  \*

"The Court is not required to believe plaintiff's statement that she intended to release only James W. Locke, particularly when she is the one primarily interested in the outcome of the case and where her testimony contains patent omissions."

In our view, the failure of the appellant to testify explicitly, whether or not she had read and understood the language of the release document, is not sufficient in itself to constitute a failure of burden of proof. We may assume that she read the document before signing it. The district court appears to have proceeded upon the assumption that to the lay reader the language of the release "clearly expressed" an intention to release these appellees; that had the document been read the fact that these appellees had been released would have been clearly apparent; that her brief testimony as to intent was incredible in absence of testimony explaining its inconsistency with the intent so expressed in the document.

We do not regard the document as so clear in its coverage as to render incredibly inconsistent testimony as to a contrary intent. The question is the clarity of the document to this appellant, knowing what she knew as to who the insured was and what the policy limits were. Under these circumstances, the document's apparent confinement of the release to a "certain accident, casualty or event which occurred on or about the twenty-fifth day of May, 1957, at or near Mitchell, Oregon, * * *" might very well to this layman have excluded a release of acts of negligence subsequently committed in a hospital in Prineville.

The district judge's conclusion that appellant had failed to meet her burden of proof was then apparently based, at least in part, upon the incredibility of appellant's testimony. This in turn was based not upon demeanor but, at least in part, upon the judge's view that the release of the appellees was so clearly expressed in the written instrument as to inherently require explanation. For the reasons given, we do not find an inconsistency of such a degree as to inherently require explanation. Having no way of knowing to what extent this lack of explanation bore on the decision of the district court, we deem a remand appropriate.

Reversed and remanded with instructions that judgment upon the segregated issue be set aside and for further consideration and determination of that issue upon the present record in the light of this opinion.